**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
           *Plaintiff-Appellee,*

v.

GUILLERMO PINTADO-ISIORDIA,
           *Defendant-Appellant.*

No. 05-50489

D.C. No.
CR-04-01535-BTM

OPINION

Appeal from the United States District Court
for the Southern District of California
Barry T. Moskowitz, District Judge, Presiding

Argued and Submitted
May 5, 2006—Pasadena, California

Filed May 26, 2006

Before: Donald P. Lay,* Barry G. Silverman, and
Kim McLane Wardlaw, Circuit Judges.

Per Curiam Opinion

*The Honorable Donald P. Lay, Senior United States Circuit Judge for the Eighth Circuit, sitting by designation.

**COUNSEL**

Kenneth J. Troiano, San Diego, California, for the appellant.

Carol C. Lam, United States Attorney; Roger W. Haines, Jr., Assistant United States Attorney, Chief, Appellate Section, Criminal Division; Kara A. Sandoval, Assistant United States Attorney, San Diego, California, for the appellee.

**OPINION**

PER CURIAM:

Pintado-Isiordia appeals from his conviction and sentence for violating 8 U.S.C. § 1326. We affirm in part, vacate in part and remand for resentencing.

**A.   Evidentiary Issues**

1.   *Birth record*

[1] The record of Pintado-Isiordia's birth, which was issued by the government of Nayarit, Mexico, is self-authenticating under Fed. R. Civ. P. 44(a)(2).[1] The Government was not

---

[1]Rule 27 of the Federal Rules of Criminal Procedure makes Fed. R. Civ. P. 44 applicable in criminal proceedings.

required to submit a "final certification" under that Rule because the birth record and its attestation were certified by an Apostille in accordance with the Hague Convention Abolishing the Requirement of Legalisation for Foreign Public Documents,[2] to which both Mexico and the United States are parties. Pintado-Isiordia argues that the district court erred by finding "good cause" for admitting the birth record, but that is a separate exception to the "final certification" requirement.

[2] We do not agree, however, with the district court's conclusion that the Government proved that this *particular* birth record fell within the public records exception to the hearsay rule. The portion of the document that purports to set forth the legal authority for maintaining the record is shown as "illegible" in the translated copy submitted to the district court. Thus, we cannot tell if the document was a record of matters "observed pursuant to duty imposed by law." Fed. R. Evid. 803(8).

[3] Nevertheless, any error was harmless. Pintado-Isiordia's mother testified that her husband had Pintado-Isiordia's birth registered in Nayarit, and thus, the birth certificate merely corroborates his own witness's first-hand account of what transpired after his birth in December 1951. In that regard, the birth certificate was hardly prejudicial to Pintado-Isiordia's defense. For that same reason, even if we assume that the birth certificate was "testimonial" under *Crawford v. Washington*, 541 U.S. 36 (2004), and thus its admission violated Pintado-Isiordia's Sixth Amendment right to confront the witnesses against him, he was not denied a fair trial.

---

[2]527 U.N.T.S. 189, T.I.A.S. 10072; *see* Fed. R. Civ. P. 44(a)(2) ("The final certification is unnecessary if the record and the attestation are certified as provided in a treaty or convention to which the United States and the foreign country in which the official record is located are parties.").

### 2.   *Military records*

**[4]** We see no reason why the Government could not use the Army National Guard letter to rebut the suggestion that Pintado-Isiordia's enlistment contract proves that he was a United States citizen. In any event, the district court took more than adequate measures to prevent any unfair prejudice. First, the district court instructed the jury that it could consider the letter only to decide how much weight to give Pintado-Isiordia's enlistment contract, not as independent evidence that he was an "immigrant alien." Second, it permitted Pintado-Isiordia's expert to testify that the Army did not discharge Pintado-Isiordia as a result of any official investigation and that Pintado-Isiordia served from 1976 to sometime in 1981. That Pintado-Isiordia was honorably discharged had nothing to do with his alienage, and even if it did, its exclusion was not harmful in light of the limiting instruction and expert testimony.

### 3.   *Military photo*

**[5]** Nor was it error for the district court to exclude the photograph of Pintado-Isiordia in military uniform. That Pintado-Isiordia served in the military was established by the enlistment contract and his expert's testimony. We agree with the district court that the only apparent purpose behind introducing the photograph was to elicit the jury's sympathy and patriotism, which runs afoul of Fed. R. Evid. 403.

### B.   Sentencing Issues

**[6]** Pintado-Isiordia claims that the district court erred by using his 1988 conviction for assault with a firearm to enhance his sentence, because a jury did not find beyond a reasonable doubt that it was a "crime of violence" (and hence an "aggravated felony"). That objection has no merit in light of *Almendarez-Torres v. United States*, 523 U.S. 224, 239-47 (1998), and we decline the invitation, as we have done before,

to hold that the Supreme Court implicitly overruled that decision. *See United States v. Pacheco-Zepeda*, 234 F.3d 411, 414 (9th Cir. 2001) ("*Almendarez-Torres* may eventually be overruled. But such speculation does not permit us to ignore controlling Supreme Court authority.").

**[7]** We cannot tell from the record, however, on what basis the district court concluded that Pintado-Isiordia's conviction qualified as a "crime of violence." In particular, it is unclear whether the district court relied on *Taylor*'s categorical approach, *see Taylor v. United States*, 495 U.S. 575, 599 (1990), or the modified categorical approach, *see United States v. Hernandez-Valdovinos*, 352 F.3d 1243, 1246 (9th Cir. 2003). Thus, we vacate Pintado-Isiordia's sentence, and remand to the district court so that it may consider whether his conviction for assault with a firearm qualifies as a "crime of violence" under either of those approaches.

**AFFIRMED IN PART, VACATED IN PART AND REMANDED.**