**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee*,

v.

ROBERTO LOPEZ, AKA Robert
Hernandez, AKA Roberto
Hernandez, AKA Ice, AKA Robert
Lopez, AKA Roberto Lopez, AKA
Roberto Lopez-Francisco, AKA
Mario, AKA Roberto Mendoza,
AKA Roberto Mendoza-Hernandez,
*Defendant-Appellant*.

No. 12-50464

D.C. No.
2:11-cr-00688-
JAK-1

OPINION

Appeal from the United States District Court
for the Central District of California
John A. Kronstadt, District Judge, Presiding

Argued and Submitted
October 9, 2013—Pasadena, California

Filed April 2, 2014

Before: Harry Pregerson, Kim McLane Wardlaw,
and Richard C. Tallman, Circuit Judges.

Opinion by Judge Wardlaw

**SUMMARY**[*]

---

### Criminal Law

Affirming a conviction for being an alien found in the United States after deportation, in violation of 8 U.S.C. § 1326, the panel held that § 1326 does not require the government to prove the existence of an order of deportation as an element of the crime in cases where the defendant has been deported or removed.

The panel held that a Verification of Removal is nontestimonial, and that its admission thus comports with the requirements of the Confrontation Clause. The panel also held that the Verification of Removal is admissible under the public records exception to the rule against hearsay.

The panel held that the evidence, including the Verification of Removal, was sufficient to support the verdict even though the district court clearly erred by admitting a Border Patrol agent's lay opinion testimony on the ultimate question before the jury in the absence of personal knowledge, in violation of Fed. R. Evid. 602 and 701.

The panel held that the district court did not abuse its discretion in denying without an evidentiary hearing the defendant's motion for a new trial based on an allegation of false testimony.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

## COUNSEL

Davina T. Chen (argued), Law Office of Davina T. Chen, Glendale, California, for Defendant-Appellant.

L. Ashley Aull (argued), Office of the United States Attorney, Los Angeles, California, for Plaintiff-Appellee.

## OPINION

WARDLAW, Circuit Judge:

Roberto Lopez Francisco ("Lopez") appeals his conviction following a jury trial for being an alien found in the United States after deportation, in violation of 8 U.S.C. § 1326. We agree with the district court that 8 U.S.C. § 1326 does not require the government to prove the existence of an order of deportation as an element of the crime in cases where the defendant has been deported or removed. We affirm Lopez's conviction despite the erroneous admission of lay opinion testimony by a key government witness because the remaining evidence of physical removal, including Lopez's Verification of Removal (Form I-296), is legally sufficient to support the jury's verdict. We also conclude that the district court did not abuse its discretion in denying Lopez's motion for a new trial.

I.

On February 9, 2010, Lopez, a native and citizen of Mexico, was arrested outside Lukeville, Arizona and transferred to the Border Patrol Station in Tucson for processing. Lukeville is on the United States–Mexico border.

The following day, Border Patrol Agent Craig Harris interviewed and fingerprinted Lopez at the Tucson station. On February 11, 2010, according to the government, Lopez was transported by bus to the Nogales, Arizona port of entry and removed from the United States across the border to Mexico. On June 22, 2011, an ICE officer arrested Lopez outside his home in Los Angeles.

During the one-day trial, the government introduced as Exhibit 12 a Notice to Alien Ordered Removed/Departure Verification (Form I-296) from Lopez's A-File.[1] The form is used to record the removal of an individual from the United States during the expedited removal process.[2] This form has two parts. The top half of the form, the "Notice to Alien

---

[1] "The Alien File (A-File), Index, and National File Tracking System of Records is the official record system that contains information regarding transactions involving an individual as he/she passes through the U.S. immigration and inspection process." Privacy Act of 1974; U.S. Citizenship and Immigration Services, Immigration and Customs Enforcement, Customs and Border Protection—001 Alien File, Index, and National File Tracking System of Records, 76 Fed. Reg. 34233, 34234 (June 13, 2011). "The hardcopy paper A-File, which contains the official record material about each individual for whom DHS has created a record under the Immigration and Nationality Act such as: Naturalization certificates; various documents and attachments (e.g., birth and marriage certificates); applications and petitions for benefits under the immigration and nationality laws; reports of arrests and investigations; statements; other reports; records of proceedings before or filings made with the U.S. immigration courts and any administrative or federal district court or court of appeal; correspondence, and memoranda." Id. at 34236.

[2] Expedited removal proceedings provide a streamlined process by which aliens who attempt to gain entry to the United States but are not admissible can be removed by an immigration officer without further hearing or review. This process does not apply to those seeking asylum or expressing a fear of persecution. See 8 U.S.C. § 1225(b)(1)(A)(i).

Ordered Removed," warns that if the removed alien attempts to enter, enters, or is found in the United States he can be prosecuted for a felony under 8 U.S.C. § 1326 and could face severe penalties. The officer who serves this warning enters his signature on that portion of the form. In Lopez's case, Agent Harris served the warning. Agent Harris's name is typed on the signature line next to his signature along with his title, Border Patrol Agent, and his office location, Tucson, Arizona.

The bottom half of the form, the "Verification of Removal," is the portion designed to record the physical removal of the alien across the border. The verification of removal includes the following information about the alien's departure: departure date, port of departure, manner of departure, and signature and title of the verifying officer. In addition, it bears a photograph of the alien removed, his signature, his right index fingerprint, and the signature of the official taking that fingerprint. Here, all portions of the form were completed. Thus, Lopez's name, photograph, signature, and fingerprint appear on his Verification of Removal. The departure date is listed as February 11, 2010, the manner of departure is described as "afoot," and the port of departure is identified as Nogales, Arizona. The form bears signatures from two officers: a border patrol agent who verified the removal and the official who took Lopez's fingerprint. Neither of these signatures is legible, however, and none of the government's witnesses could identify the officers who signed the form.

Agent Harris was the government's key witness to Lopez's physical removal, an element of the offense the government is required to prove beyond a reasonable doubt. Removal was the only element seriously contested at trial.

Agent Harris testified that the alien's fingerprint is placed on the verification of removal in Nogales as the alien "step[s] off the bus [from Tuscon] and right before [he is] removed back . . . to Mexico." After the alien is fingerprinted, he is walked to the border. On cross, defense counsel questioned Agent Harris about his inability to decipher the signatures on Lopez's Verification of Removal or otherwise identify the agents who signed it. On redirect, the prosecutor asked Agent Harris, "based upon your training and experience by looking at [Lopez's Verification of Removal,] do you believe he was actually deported from the United States?" Agent Harris responded, "Yes. I believe he was." It is undisputed that Agent Harris was not at the Nogales border when Lopez was removed; nor was Harris qualified as an expert under Federal Rule of Evidence 702.

Although Lopez unsuccessfully challenged the validity of his removal order in a pre-trial motion to dismiss the information, the government did not introduce the order of removal (Form I-860) at trial. At the close of the government's case, Lopez moved for a directed verdict under Federal Rule of Criminal Procedure 29 in part because the government failed to introduce a removal order. The district court denied the motion, ruling that an order of deportation or removal is not a necessary element of a Section 1326 offense so long as evidence of physical removal has been introduced.

Lopez raises several issues: whether 8 U.S.C. § 1326 requires proof of an order of removal or deportation as an element of the offense when the defendant has been deported or removed; whether the Verification of Removal and Agent Harris's opinion testimony that Lopez was in fact deported were properly admitted; and, if not, whether those errors

require us to reverse Lopez's conviction and vacate his sentence.

## II.

The district court ruled that 8 U.S.C. § 1326 does not require the government to prove that an order of removal or deportation was issued where the alien has been deported or removed. We agree. We review de novo a district court's interpretation of a statute, and we begin with the text of the statute. *See United States v. Havelock*, 664 F.3d 1284, 1289 (9th Cir. 2012) (en banc). The statute provides that an alien who enters, attempts to enter, or is at any time found in the United States shall be guilty of a crime if he previously "has been denied admission, excluded, deported, or removed or has departed the United States while an order of exclusion, deportation, or removal is outstanding." 8 U.S.C. § 1326(a)(1). Lopez argues that the last clause, "while an order of exclusion, deportation, or removal is outstanding," applies to the entire subsection. As the district court concluded, however, the statutory language requires as an element of the offense an outstanding order of exclusion, deportation, or removal only when an alien has "departed" the United States. If the alien "has been denied admission, excluded, deported, or removed," then no order is required. The phrase is worded in the passive voice because the alien is the subject of the enforcement action. The second clause presupposes that the alien departed on his own initiative, in which case, the fact of his return alone cannot support a conviction under Section 1326 because returning alone is not the criminal act punished by Section 1326(a)(1). Indeed, "As a general rule, it is not a crime for a removable alien to remain present in the United States." *Arizona v. United States*, 132 S. Ct. 2492, 2505 (2012). Rather, the criminal act

is returning to the United States after the government has ordered the alien excluded, deported, or removed. Hence, the order of deportation, removal, or exclusion becomes a necessary element that the government must prove beyond a reasonable doubt if the alien returns after he "has departed" on his own. Adducing sufficient proof that the order was issued is the only way to demonstrate that the government has, in fact, ordered the alien removed and that his return without permission violates the statute.

The Ninth Circuit's Model Criminal Jury Instruction 9.8 supports this interpretation. The model instruction, properly given to the jury here, identifies five elements. As to the first element, the government must prove:

> First [[the defendant was [removed] [deported] from the United States]] [[the defendant departed the United States while an order of [removal] [deportation] was outstanding]];

9th Cir. Model Crim. Jury Instr. 9.8 (2010) (all brackets in original). The separate double brackets indicate that the court should give the jury either one of the instructions, but not both. So if the defendant was deported or removed, the court moves on to the second element of the offense. If he instead "departed," the government does not meet its burden with respect to element one unless it also proves that the defendant departed "while an order of removal or deportation was outstanding." *See United States v. Gonzalez-Villalobos*, 724 F.3d 1125, 1129 (9th Cir. 2013) ("In a prosecution for illegal reentry under 8 U.S.C. § 1326(a), the Government must prove, *inter alia*, that the defendant was previously 'denied admission, excluded, deported, or removed or has

departed the United States while an order of exclusion, deportation, or removal [wa]s outstanding.' 8 U.S.C. § 1326(a)(1); *see also* 9th Cir. Model Crim. Jury Instr. 9.8 (2010).").

The cases Lopez cites for the proposition that an order of removal or deportation is an element of the crime that must be proven to the jury under all circumstances are inapposite. True, we have said that "[o]ne of the elements of a conviction under § 1326 is a prior removal order." *United States v. Vidal-Mendoza*, 705 F.3d 1012, 1014 (9th Cir. 2013). But *Vidal-Mendoza*—as well as *United States v. Barajas-Alvarado*, 655 F.3d 1077, 1079 (9th Cir. 2011), and other cases cited by Lopez—involve collateral challenges to the validity of an order of deportation under 8 U.S.C. § 1326(d), not whether a deportation or removal order must be introduced at trial. These cases stand for the uncontroversial proposition that the validity of a removal or deportation order is always a predicate to the crime because the deportation must be valid, legal, and comport with due process requirements to sustain a conviction under Section 1326. This does not necessarily mean that where the government proves that the alien was actually physically removed, the government must also prove the existence of a deportation or removal order.

Indeed, if actual physical removal or deportation is proven, a valid order of removal or deportation may be presumed in the absence of a collateral pre-trial challenge in the form of a motion to dismiss the indictment, or, as here, the information. Fed. R. Crim. P. 12(b)(3)(B) (requiring "a motion alleging a defect in the indictment or information" to be made before trial); *see, e.g.*, *United States v. Lopez-Velasquez*, 629 F.3d 894, 896 (9th Cir. 2010) (en banc)

(reviewing a district court's grant of a motion to dismiss an indictment under Section 1326 based on the invalidation of the deportation order underlying the indictment). Implicitly recognizing this rule, Lopez filed a pre-trial motion to dismiss the information due to unlawful deportation, which challenged the validity of his underlying removal order. The district court denied this motion, finding that although Lopez did not sign the removal order as required by 8 C.F.R. § 235.3(b)(2)(I), he suffered no prejudice. Lopez did not appeal the denial of his motion to dismiss.

Lopez asserts that our decision in *United States v. Bahena-Cardenas*, 411 F.3d 1067 (9th Cir. 2005), requires the government to prove that an order of removal or deportation was outstanding as an element of every § 1326(b) offense. Lopez points us to our description in that case of what the government must show to prove "physical removal": "The Government must prove beyond a reasonable doubt that Bahena-Cardenas physically left the country sometime between the time he was ordered removed and the time he was found in the United States." *Id.* at 1074. In *Bahena-Cardenas*, the issue was whether the government could meet its burden of proving actual physical removal by introducing a warrant of deportation signed by the agent who witnessed the defendant's departure from the United States. We concluded that the warrant of deportation is nontestimonial and therefore does not implicate *Crawford v. Washington*, 541 U.S. 36 (2004). 411 F.3d at 1074–75. Because a warrant of deportation is admissible to prove physical removal in a deportation case, we upheld the conviction. *Bahena-Cardenas* is squarely in line with our holding as to proof of removal or deportation orders, and does nothing to disturb the legal requirement that actual physical removal from the United States must be proven.

## III.

It is well-established that the government is required to prove physical removal from the United States as an element of the crime under 8 U.S.C. § 1326. *See Bahena-Cardenas*, 411 F.3d at 1074. We must decide whether the government presented sufficient evidence of Lopez's physical removal by submitting the Verification of Removal along with Officer Oki's testimony as the temporary custodian of Lopez's A-File and eliciting opinion testimony from Agent Harris. To determine the admissibility of the Verification of Removal, we review de novo the district court's interpretation of the Federal Rules of Evidence, but once we determine that the evidence does fall within the given rule, we review the district court's decision to admit it for abuse of discretion. *United States v. Durham*, 464 F.3d 976, 981 (9th Cir. 2006). Because Lopez failed to object to Agent Harris's opinion testimony at trial, we review its admission for plain error. *Puckett v. United States*, 556 U.S. 129, 135 (2009).[3]

## A.

The district court did not err by admitting Lopez's Verification of Removal. A verification of removal comports with the requirements of the Confrontation Clause and is admissible under the public records exception to the rule against hearsay.

---

[3] Plain error review involves four steps: there must be an error or defect; the error must be clear or obvious; the error must have affected the appellant's substantial rights; and we may exercise our discretion to remedy the error in cases where it "seriously affects the fairness, integrity or public reputation of judicial proceedings." *Puckett*, 556 U.S. at 135 (internal quotation marks and alteration omitted).

We have previously held that "a warrant of removal is nontestimonial."**[4]**  *Bahena-Cardenas*, 411 F.3d at 1075; *United States v. Orozco-Acosta*, 607 F.3d 1156, 1163 (9th Cir. 2010) (reaffirming *Bahena-Cardenas* after *Melendez-Diaz v. Massachusetts*, 557 U.S. 305 (2009)).

We have not yet addressed a Confrontation Clause challenge to the admissibility of a verification of removal as opposed to a warrant of removal.  However, reasoning by analogy to *Bahena-Cardenas* and *Orozco-Acosta*, we conclude that like a warrant of removal, a verification of removal is nontestimonial.  Both documents record the alien's physical removal across the border and are made for the purpose of recording the movement of aliens.  *Compare Orozco-Acosta*, 607 F.3d at 1162–63 (describing a warrant of removal), *with* Form I-296.  The only functional difference between the two is that a verification of removal is used to record the removal of aliens pursuant to expedited removal procedures, while the warrant of removal records the removal of aliens following a hearing before an immigration judge.  *See* 8 C.F.R. § 241.2 (2005) (noting that a Form I-205, Warrant of Removal, is "based upon the final administrative removal order in the alien's case"); 8 U.S.C. § 1229a (explaining that removal proceedings shall in general be conducted by an immigration judge, and that such proceedings "shall be the sole and exclusive procedure for determining whether an alien may be admitted to the United States or, if the alien has been so admitted, removed from the United States[,]" except where otherwise specified in the chapter).

---

**[4]** Form I-205 is entitled "Warrant of Removal/Deportation."  It is referred to interchangeably in our previous cases and in federal regulations as a warrant of removal or a warrant of deportation.

In *Bahena-Cardenas*, we concluded that a warrant of removal/deportation is nontestimonial because it is "not made in anticipation of litigation, and because it is simply a routine, objective cataloging of an unambiguous factual matter." 411 F.3d at 1075. In *Orozco-Acosta*, we reaffirmed our holding in *Bahena-Cardenas*, once again reasoning that warrants of removal/deportation are nontestimonial because they are "not made in anticipation of litigation," they are "simply a routine, objective, cataloguing of an unambiguous factual matter," and they "have inherent reliability because of the Government's need to keep accurate records of the movement of aliens." *Orozco-Acosta*, 607 F.3d at 1163 (internal quotation marks omitted).

These same considerations lead us to conclude that a verification of removal is nontestimonial in nature as well. First, there is no evidence that a verification of removal is completed in anticipation of litigation. Second, a verification of removal is "simply a routine, objective, cataloguing of an unambiguous factual matter." *Id.* A verification of removal records the fact that an individual alien was removed from the United States. The alien's name, photograph, fingerprint, and signature all appear on the form, as do the departure date, the port of departure, and the manner of departure. It is signed by a "verifying officer" and requires that officer to indicate his title as well. That it is the removed alien's fingerprint on the form is evidenced by the signature of the officer who took the fingerprint. Thus, a verification of removal catalogues the unambiguous factual matter—whether an alien has been removed—just as a warrant of removal/deportation does. Verifications of removal are also routine. They are completed for all aliens removed pursuant to expedited removal procedures. Third, a verification of removal has the same "inherent reliability because of the Government's need

to keep accurate records of the movement of aliens" as a warrant of removal/deportation. It is equally important for the government to record which aliens have been removed under expedited removal procedures as it is to record which aliens have been removed in other circumstances. Both documents are placed in the alien's A-File. There is no daylight between the function of these two documents that would suggest one should be deemed nontestimonial while the other is deemed testimonial.

Although Lopez recognizes that the Confrontation Clause analysis applies equally to a warrant of removal/deportation and a verification of removal, he contends that a verification of removal is, nevertheless, inadmissible hearsay. Under Federal Rule of Evidence 803(8), a record or statement of a public office is admissible as an exception to the hearsay rule if it sets out "a matter observed while under a legal duty to report, but not including, in a criminal case, a matter observed by law-enforcement personnel." Fed. R. Evid. 803(8)(A)(ii). We review de novo whether a verification of removal falls into the public records exception to the hearsay rule. *United States v. Marguet-Pillado*, 560 F.3d 1078, 1081 (9th Cir. 2009).

Again, reasoning by analogy to our precedent permitting admission of warrants of removal/deportation, we reject Lopez's assertion that the general prohibition against admitting records created by law enforcement personnel codified in Federal Rule of Evidence 803(8)(A)(ii) applies to verifications of removal. In *United States v. Loyola-Dominguez*, 125 F.3d 1315, 1317–18 (9th Cir. 1997), we reaffirmed that warrants of deportation are admissible in Section 1326 prosecutions even though they describe a matter observed by border patrol agents. *See United States v.*

*Hernandez-Rojas*, 617 F.2d 533, 534–35 (9th Cir. 1980) (holding the same). Because warrants of deportation reflect "ministerial, objective observation[s] and do not implicate the concerns animating the law enforcement exception to the public records exception," they are not precluded by that exception. *Loyola-Dominguez*, 125 F.3d at 1318 (internal quotation marks omitted). We have noted that the *purpose* of the law enforcement exception is to "exclude observations made by officials at the scene of the crime or apprehension, because observations made in an adversarial setting are less reliable than observations made by public officials in other situations." *United States v. Hernandez-Rojas*, 617 F.2d 533, 535 (9th Cir. 1980). Excluding a verification of removal would not further this purpose because the observation made by a law enforcement officer in verifying the removal of an alien is not made at the scene of a crime or apprehension nor made in an adversarial setting. Rather, like a warrant of deportation, a verification of removal records the movement of aliens across the United States border. The form thus shares the same "inherent reliability because of the Government's need to keep accurate records of the movement of aliens," *id.*, that we found important to our conclusion that warrants of deportation are not inadmissible hearsay.

Lopez misplaces his reliance on slight differences in the two types of forms, arguing that the observations recorded on a verification of removal are more subjective. While it is true that subjective observations of law enforcement officers are excluded as inadmissible hearsay, the slight differences in the two forms cannot obscure the plain fact that neither form leaves room for subjectivity. Both forms require law enforcement agents to verify the removal of aliens from the United States and attest to that verification. The question

answered by the officer signing either form is the same objective one: whether or not the alien was removed.

Lopez also argues that the differences between the two forms are relevant to the first prong of the public records exception: whether the matter was "observed while under a legal duty to report." Fed. R. Evid. 803(8). He argues that because a warrant of deportation includes a signature line for the officer who "witnessed" the removal, while a verification of removal does not, any removal recorded on the latter form cannot be said to have been "observed" and is therefore inadmissible. Lopez's argument falters, however, when one considers that warrants of deportation, which are admissible, provide an option for an officer to indicate that he either "witnessed" the removal *or* that he "verified the removal." If verifying the removal constitutes an "observation" sufficient to satisfy the requirements of Rule 803(8), the same principle applies to verifications of removal, rendering them also admissible under Rule 803(8).

The verification of removal also meets the requirement that "the document was a record of matters observed pursuant to a duty imposed by law." *United States v. Pintado-Isiordia*, 448 F.3d 1155, 1157 (9th Cir. 2006) (internal quotation marks omitted). We have not interpreted the "duty imposed by law" requirement to mean that a statute or regulation expressly imposes duties to observe, report, and keep records. Rather, it suffices if the nature of the responsibilities assigned to the public agency are such that the record is appropriate to the function of the agency. 4 Christopher B. Mueller & Laird C. Kirkpatrick, *Federal Evidence* § 8.88 (3d ed. 2012) (collecting cases). Recording and maintaining verifications that an individual has been deported falls under the rubric of responsibilities assigned to the Department of Homeland

Security; therefore, completing the verification of removal form is appropriate to the function of the agency.

Having determined that a verification of removal falls within the public records exception to the hearsay rule, we examine whether it was an abuse of discretion for the district court to admit it here.  It was not.  At trial, the prosecution properly authenticated the Verification of Removal by calling deportation officer Ron Oki, the temporary custodian of Lopez's A-File, as a witness.  In *United States v. Estrada-Eliverio*, 583 F.3d 669 (9th Cir. 2009), we squarely held that documents from an A-File may be authenticated under Federal Rule of Evidence 901,[5] which requires "the proponent [to] produce evidence sufficient to support a finding that the item is what the proponent claims it is."  Fed. R. Evid. 901(a).  Specifically, under Rule 901(b)(7), public records may be authenticated based on evidence that "a) a document was recorded or filed in a public office as authorized by law; or b) a purported public record or statement is from the office where items of this kind are kept."  Fed. R. Evid. 901(b)(7).  In *Estrada-Eliverio*, we held that the district court did not abuse its discretion in admitting several A-File documents,

---

[5] In *Estrada-Eliverio* we considered the interplay between Federal Rule of Civil Procedure 44 and Federal Rule of Evidence 901.  Under Rule 44, made applicable in a criminal case by Federal Rule of Criminal Procedure 27, "an official record is admissible if it is an official publication of the record or a copy of the record attested by the officer with legal custody of the record and accompanied by a certificate, made under seal, that the officer has custody.  In addition, the Rule allows a party to prove that a document is an official record by any other method authorized by law."  *Estrada-Eliverio*, 583 F.3d at 672 (internal quotation marks and citations omitted).  We held, "[a]lthough the government could have relied on Rule 44 to authenticate the A-file documents, it was not so restricted . . . FRE 901 provided an alternative basis for establishing the documents' authenticity."  *Id.*

including the defendant's warrant of removal or deportation, under Rule 901(b)(7).  There, a Border Patrol Agent testified "that such documents are kept in A-files, that the documents offered were copies of documents from [defendant's] A-file, that [the Agent] was the custodian of that A-file, and that the documents admitted were true and correct copies of the documents in the A-file, which [the Agent] had personally seen." 583 F.3d at 671.  In Lopez's case, Officer Oki testified to the same—that he was the temporary custodian of Lopez's A-File, that a verification of removal is a document that is included customarily in A-Files, and that the Verification of Removal introduced as Exhibit 12 was a true and correct copy of a document from Lopez's A-File.  Moreover, as we explained in *Estrada-Eliverio*, "FRE 901 does not require personal knowledge of a document's creation, but rather only personal knowledge that a document was part of an official file." 583 F.3d at 673.  Officer Oki's testimony indicates that he had the requisite personal knowledge, and therefore his "testimony was sufficient to make a prima facie case for authenticity." *Id.*

B.

Although it was not an abuse of discretion to admit the Verification of Removal, doubts apparently lingered as to whether it was sufficient evidence to convince a jury beyond a reasonable doubt that Lopez had been physically removed. On direct, Officer Oki testified that he was unable to determine who signed the Verification of Removal or identify either the verifying officer or official who took the fingerprint.  Nor was Officer Oki in Nogales when Lopez was removed or in possession of any other personal knowledge of Lopez's removal.  Similarly, during cross-examination, Agent Harris could testify only to general procedures and admitted

he did not witness Lopez's removal (he was forty to fifty miles away at the time) and did not know who signed the Verification of Removal as the verifying officer or as the agent who took the fingerprint. Indeed, he had "no idea" who either person was.

Apparently realizing the possible gap in proof and the doubts that may have been generated by the agents' lack of personal knowledge as to Lopez's removal, on redirect, the prosecutor asked Agent Harris, "[B]ased upon your training and experience by looking at [Lopez's Verification of Removal,] do you believe he was actually deported from the United States?" Agent Harris responded, "Yes. I believe he was."

Lopez argues that this testimony was inadmissible under Federal Rule of Evidence 602 because Agent Harris lacked personal knowledge. He also argues it was inadmissible under Federal Rule of Evidence 701 because it could not have been "rationally based on Agent Harris's perception," nor was it established that Agent Harris had any training or experience removing persons at the border or with the form itself.

The district court clearly erred by admitting Agent Harris's lay opinion on the ultimate question before the jury. Agent Harris's testimony does not satisfy the personal knowledge requirement of Federal Rule of Evidence 602. Under Rule 602, a "witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." Personal knowledge means knowledge produced by the direct involvement of the senses. *See* 3 Mueller & Kirkpatrick, *Federal Evidence* § 6.6 (3d ed. 2012) (collecting cases).

Agent Harris was not in Nogales when Lopez was deported, and he did not witness the deportation. In fact, Agent Harris last saw Lopez before Lopez's alleged departure on the bus from Tucson to Nogales. Nor could Agent Harris identify either of the signatures on the Verification of Removal, and he certainly had not witnessed those signatures. Indeed, Agent Harris admitted that he could not even remember Lopez, testifying that Lopez was "a pretty common name." He could not have testified as to his personal knowledge as required by Rule 602.

Agent Harris's lay opinion testimony is also inadmissible under Federal Rule of Evidence 701. A lay person may offer testimony in the form of an opinion if it is "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Rule 701(a) contains a personal knowledge requirement. The advisory committee notes to Rule 701 clarify that 701(a) is "the familiar requirement of first-hand knowledge or observation," Fed. R. Evid. 701 advisory committee notes (1972), and we have held that the personal knowledge requirement under Rule 602 is the same as that under Rule 701(a), *see United States v. Simas*, 937 F.2d 459, 464–65 (9th Cir. 1991).

In presenting lay opinions, the personal knowledge requirement may be met if the witness can demonstrate first-hand knowledge or observation. As described above, Agent Harris neither witnessed Lopez's deportation nor could he identify the people who signed the form. Although the prosecution could have elicited Agent Harris's lay opinion testimony had it laid a proper foundation for Harris's

familiarity and experience, if any, with verifications of removal or the removal of aliens at the border, the prosecution failed to do so. *See United States v. Martinez*, 657 F.3d 811, 818–19 (9th Cir. 2011) (upholding admission of lay testimony on the meaning of coded communications by a former member of the Mexican Mafia after establishing the member's "long experience in writing notes for the organization"); *see also United States v. Durham*, 464 F.3d 976, 982 (9th Cir. 2006) ("[C]ourts have permitted lay witnesses to testify that a substance appeared to be a narcotic so long as a foundation of familiarity with the substance is established.") (quoting Fed. R. Evid. 701 advisory committee notes (2000)). *But see United States v. Figueroa-Lopez*, 125 F.3d 1241, 1246 (9th Cir. 1997) (holding that testimony by law enforcement agents that defendant's conduct was consistent with that of a drug trafficker violated Federal Rule of Evidence 701 because permitting such testimony subverts the requirements of Federal Rule of Criminal Procedure 16(a)(1)(E)); *United States v. Peoples*, 250 F.3d 630, 641 (8th Cir. 2001) (holding inadmissible lay opinion testimony by an FBI agent about recorded conversations because "when a law enforcement officer is not qualified as an expert by the court, her testimony is admissible as lay opinion only when the law enforcement officer is a participant in the conversation, has personal knowledge of the facts being related in the conversation, or observed the conversations as they occurred," none of which occurred in this case).

The prosecution laid no foundation for Agent Harris's opinion that the Verification of Removal meant Lopez had actually been physically removed. The prosecutor never elicited the supposed "training and experience" he asked Agent Harris to rely upon for his opinion testimony. Nor did he ask whether Agent Harris ever used the form, worked at a

port of entry, removed anyone, or received training on the use of the form. What *was* established is that Harris had been a border patrol agent for four and a half years and at the time of trial was assigned to the Naco Border Patrol Station, but had been temporarily detailed to Three Points, west of Tucson. Harris further testified that in February 2010, he was temporarily detailed to the Tucson station, forty to fifty miles from Nogales, for a period of six months. The Tucson station is a processing center where individuals are brought after they are arrested to be fingerprinted, photographed, and interviewed. Tucson is not a place from which Mexican citizens are actually removed or deported.

Based on the evidence admitted at trial, no possible scenario exists under which Agent Harris's lay opinion testimony was "predicated upon concrete facts within [his] own observation and recollection—that is facts perceived from [his] own senses, as distinguished from [his] opinions or conclusions drawn from such facts." *Durham*, 464 F.3d at 982 (internal quotation marks omitted).

C.

We must next determine whether the error affected Lopez's substantial rights, "which in the ordinary case means he must demonstrate that it affected the outcome of the district court proceedings." *Puckett*, 556 U.S. at 135 (internal quotation marks omitted); *see also United States v. Anguiano-Morfin*, 713 F.3d 1208, 1210 (9th Cir. 2013), *cert. denied*, 134 S. Ct. 543 (2013). Lopez has not met this burden because the jury could have concluded that Lopez was actually physically removed based on the Verification of Removal and Officer Oki's testimony which authenticated it.

Lopez argues that the Verification of Removal alone was legally insufficient to support the jury's finding that he had been physically removed.  We clarified our two-step approach to evaluating sufficiency of the evidence claims in *United States v. Nevils*, 598 F.3d 1158 (9th Cir. 2010) (en banc).  First, we are required to "construe the evidence at trial in the light most favorable to the prosecution."  *Id.* at 1161 (internal quotation marks omitted).  Only then may we determine whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Id.* (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).  Evidence will therefore be "insufficient to support a verdict where mere speculation, rather than reasonable inference, supports the government's case."  *Id.* at 1167.

We have repeatedly held that a warrant of removal is "sufficient alone to support a finding of removal beyond a reasonable doubt."  *United States v. Zepeda-Martinez*, 470 F.3d 909, 913 (9th Cir. 2006); *see United States v. Salazar-Lopez*, 506 F.3d 748, 755 (9th Cir. 2007) ("We noted in *Zepeda-Martinez* that this warrant is sufficient alone to support a finding of removal beyond a reasonable doubt.") (internal quotation marks and alteration omitted); *Bahena-Cardenas*, 411 F.3d at 1075 ("We hold that the warrant of deportation in this case is nontestimonial and thus admissible. Accordingly, the government provided sufficient evidence of physical removal.").

Similarly, a properly authenticated verification of removal is legally sufficient to support a finding of physical removal beyond a reasonable doubt.  As with warrants of removal, the Verification of Removal "bore [defendant's] name, immigration identification number, photograph, signature, and fingerprint."  *Salazar-Lopez*, 506 F.3d at 755.  At no time

during trial did Lopez argue that the photograph, signature, and fingerprint on the Verification of Removal did not belong to him.**⁶**  During trial, the government called a fingerprint expert who testified that the fingerprint on Lopez's Verification of Removal belonged to Lopez, and Lopez never contested that fact.   Nor did Lopez contend that the photograph on the Verification of Removal was not of him; and the jury could simply compare the photograph to the defendant to determine whether it was his.  Similarly, Lopez did not challenge the authenticity of his signature on the form.

In closing Lopez argued, "This entire case is built on a piece of paper . . . . This is Exhibit 12.  You will have this exhibit back with you in the jury room."  Lopez also made the most he could of the government's inability to identify, much less call, the border agents who took his fingerprint and verified his removal, urging the jury to conclude that there was not proof beyond a reasonable doubt that Lopez was actually physically removed.**⁷**

---

**⁶** Lopez's counsel did argue that the government failed to prove that the A-File was linked to Lopez in conjunction with his Rule 29 motion.  The district court properly rejected this argument based on the parties' pretrial stipulations and other documents introduced during trial from the A-File, which established that the A-File belonged to Lopez.

**⁷** That the prosecutor thought it was necessary to elicit Agent Harris's improper lay opinion testimony illustrates the weakness in the government's case.  The illegible signatures on the Verification of Removal form, inability to identify the agents who signed it, and the failure to solicit testimony from those agents could, in another case, lead the jury to conclude that the government had not met its burden.  Although Officer Oki testified that verifications of removal are completed when an alien is physically removed, he did not testify about the specific procedures followed at the border.  Indeed, even in cases holding warrants

In addition to authenticating the Verification of Removal, Officer Oki's testimony provided the jury with a framework in which to view the form. He testified that he has reviewed "[t]housands" of A-Files in his career, which began in June 1996 as a special agent with INS. He testified that a verification of removal is completed when a person is physically removed from the United States, and it is principally used by U.S. Customs and Border Patrol agents because it is a document that is used at the borders. Finally, he stated that he has seen "hundreds" of these documents, all of which had the "exact format" as the one introduced in this case.

We therefore conclude that a "rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Nevils*, 598 F.3d at 1164 (quoting *Jackson*, 443 U.S. at 319). Thus, we cannot conclude that the erroneous admission of Agent Harris's lay opinion affected Lopez's substantial rights or that it "seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings." *Anguiano-Morfin*, 713 F.3d at 1210–11 (quoting *Puckett*, 556 U.S. at 135).

---

of removal sufficient alone to support a finding of physical removal, the government has elicited testimony from the agent who signed the warrant of removal or testimony from an agent with the requisite experience and training about the custom and practice of completing these forms. *See Salazar-Lopez*, 506 F.3d at 755 (explaining that although a warrant of removal is sufficient evidence of removal standing alone, the evidence of physical removal was bolstered by the testimony of the officer who signed defendant's warrant of removal); *Bahena-Cardenas*, 411 F.3d at 1072 (noting that the agent who signed the warrant of deportation did not testify, but another agent "testified that the normal practice is for deportation officers to sign the warrant of deportation when they see the alien leave the United States").

IV.

Lopez argues that the district court abused its discretion when it denied his Rule 33 motion for a new trial without an evidentiary hearing. *See United States v. Young*, 17 F.3d 1201, 1202 (9th Cir. 1994). Lopez moved for a new trial on the basis that Agent Harris testified falsely when he stated that an alien is fingerprinted as he steps off the bus in Nogales, immediately before being removed across the border. The day after the jury convicted Lopez, defense counsel, accompanied by an investigator for the public defender's office, Alonzo Garcia, interviewed Customs and Border Protection Supervisor George Schmid. According to Lopez, Officer Schmid confirmed that Agent Harris testified falsely, asserting that someone who is removed across the border at Nogales is *not* fingerprinted as he gets off the bus; instead, he is fingerprinted at the processing station.

The district court did not abuse its discretion in denying Lopez's motion for a new trial. The district court correctly found Lopez's motion for an evidentiary hearing to cross-examine Agent Harris and Officer Schmid untimely under Local Rule 7-8. However, the district court also considered the merits of Lopez's argument and did not clearly err when it found insufficient evidence of false testimony. The signed declarations of Officer Schmid and Investigator Garcia upon which Lopez relies do not directly contradict Agent Harris's testimony at trial; the unsigned declaration that did contradict Agent Harris's testimony was subsequently signed only after the contradictory language had been excised. And, even if Agent Harris testified falsely about the location at which the fingerprint is taken, that point is so tangential that Lopez cannot meet his burden of showing "there is a reasonable probability that without the evidence the result of the

proceeding would have been different." *United States v. Inzunza*, 638 F.3d 1006, 1020 (9th Cir. 2011) (internal quotation marks omitted).

## V.

Accordingly, we find no reversible error and therefore affirm.

**AFFIRMED.**