**NOT FOR PUBLICATION**

**FILED**

UNITED STATES COURT OF APPEALS

JAN 28 2025

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff-Appellee,<br><br>　v.<br><br>VINCENT GERALD GARCIA,<br><br>　　　　Defendant-Appellant. | No.　22-10291<br><br>D.C. No.<br>5:18-cr-00466-BLF-2<br><br><br>MEMORANDUM* |
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff-Appellee,<br><br>　v.<br><br>JORGE JASSO,<br><br>　　　　Defendant-Appellant. | No.　22-10333<br><br>D.C. No.<br>5:18-cr-00466-BLF-15 |
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff-Appellee,<br><br>　v.<br><br>JORGE JASSO,<br><br>　　　　Defendant-Appellant. | No.　22-10346<br><br>D.C. No.<br>5:19-cr-00035-BLF-2 |

---

*This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

Appeal from the United States District Court for the
Northern District of California
Beth Labson Freeman, District Judge, Presiding

Argued and Submitted December 3, 2024
San Francisco, California

Before: BENNETT, BRESS, and FORREST, Circuit Judges.

Defendants Vincent Garcia and Jorge Jasso appeal their conspiracy convictions under 18 U.S.C. §§ 1962(d) (RICO conspiracy) and 1959(a) (here, conspiracy to commit murder and assault with a dangerous weapon in aid of racketeering). Collectively, Defendants make four constitutional arguments, three evidentiary arguments, and a cumulative-error argument.[1] We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

**1.** *Unanimity Instruction.* Defendants argue that the district court erred by not giving a specific unanimity instruction on the counts brought under 18 U.S.C. § 1959(a). Because this issue was not raised to the district court, we review for plain error. *See United States v. Anguiano*, 873 F.2d 1314, 1318–19 (9th Cir. 1989). Plain error is (1) error, (2) that is clear or obvious, (3) that prejudices the appellant's substantial rights, and (4) that seriously affects the fairness, integrity, or public

---

[1]Jasso also appeals from a separate conviction for failure to appear after pre-trial release, under 18 U.S.C. § 3146. However, Jasso did not make any arguments in his briefing that address this conviction or any issues related to it. Therefore, any challenge to this conviction is forfeited. *See United States v. Montoya*, 45 F.3d 1286, 1300 (9th Cir. 1995).

reputation of the judicial proceedings. *United States v. Lopez*, 762 F.3d 852, 863 (9th Cir. 2014).

A jury must have "substantial agreement as to the principal factual elements underlying a specified offense." *United States v. Gonzalez*, 786 F.3d 714, 716 (9th Cir. 2015) (quoting *United States v. Ferris*, 719 F.2d 1405, 1407 (9th Cir. 1983)). While a general instruction on the unanimity requirement is normally sufficient, "a specific unanimity instruction is required if there is a 'genuine possibility of jury confusion' or a possibility 'that a conviction may occur as the result of different jurors concluding that the defendant committed different acts.'" *United States v. Lapier*, 796 F.3d 1090, 1096 (9th Cir. 2015) (quoting *United States v. Payseno*, 782 F.2d 832, 836 (9th Cir. 1986)).

Unlike *Lapier*, where the evidence showed multiple separate agreements, *id.* at 1095–98, here the evidence showed a single overarching agreement to commit murder or assault against a preselected category of people, with sub-agreements specifying individual victims, *see People v. Johnson*, 303 P.3d 379, 390 (Cal. 2013) ("A single agreement to commit several crimes constitutes one conspiracy."); *see also United States v. Arbelaez*, 719 F.2d 1453, 1457 (9th Cir. 1983) (noting that a single conspiracy exists when "there was 'one overall agreement' to perform various functions to achieve the objectives of the conspiracy,'" even if there were "subgroups or subagreements" (quoting *United States v. Zemek*, 634 F.2d 1159,

3

1167 (9th Cir. 1980))). Each member of the Nuestra Familia (NF) housed in Monterey County Jail (MCJ) was educated about gang rules and practices, including which rule violations required the "removal" of offending members, the chain of command for removals, and how to conduct removals. The evidence also showed that each victim was targeted based on these practices. Accordingly, there was no genuine risk of jury confusion here, given that the evidence clearly showed a single broad conspiracy.

2. **Broadened Indictment.** Because the Fifth Amendment requires indictment by a grand jury, "after an indictment has been returned its charges may not be broadened through amendment except by the grand jury itself." *Stirone v. United States*, 361 U.S. 212, 215–16 (1960). Count I of the indictment alleged that Garcia ordered three of the seven removals at issue. Garcia argues that two events at trial broadened this allegation. Garcia did not raise these issues at trial, so we review for plain error. *See United States v. Hartz*, 458 F.3d 1011, 1019 (9th Cir. 2006).

First, Garcia argues that the Government broadened the indictment by suggesting in its opening statement that each of the seven removals happened on his gang leadership. But the Government's opening statement is consistent with the allegations in the indictment that Garcia was a "*carnale*" with authority over other NF members. Second, Garcia argues that witness testimony suggested that he ordered Reyes's removal, an act to which the indictment did not explicitly connect

4

him. However, the indictment alleged that the highest-ranking NF member in MCJ needed to authorize removals and that Garcia was the highest-ranking NF member in MCJ. Accordingly, the district court did not plainly err in admitting this testimony or allowing the Government's opening statement.

3. ***Vouching.*** A prosecutor commits misconduct that may require a new trial by improperly vouching for a witness. *United States v. Roberts*, 618 F.2d 530, 533, 537 (9th Cir. 1980). "Vouching may occur in two ways: the prosecution may place the prestige of the government behind the witness or may indicate that information not presented to the jury supports the witness's testimony." *Id.* at 533; *accord United States v. Necoechea*, 986 F.2d 1273, 1276–78 (9th Cir. 1993) (compiling cases). Here, even assuming Defendants preserved this issue via their general pretrial motion in limine, there was no error.

First, Defendants argue that the Government improperly vouched for Special Agent Dustin McWhirter when it asked whether he took steps to verify the information in a particular inmate communication. This was not vouching; it was a run-of-the-mill question to lay a foundation.

Second, Defendants argue that the Government improperly vouched for cooperator witnesses during its closing rebuttal by emphasizing to the jury that the cooperator witnesses' agreements with the Government required truthfulness. However, the Government may present evidence of a truthfulness requirement in a

5

cooperator agreement if the defendant references the agreement in attacking the cooperator's credibility. *See United States v. Monroe*, 943 F.2d 1007, 1013–14 (9th Cir. 1991) ("[A] reference to the 'truthful testimony' provisions of a witness's agreement with the government does not constitute vouching if it is made in response to an attack on the witness's credibility because of his plea bargain."). Here, in their opening statements, Defendants asserted that the cooperators' plea bargains made them untrustworthy and repeated a similar argument during closing. Accordingly, it was not improper for the Government to emphasize the agreements' truthfulness requirement in rebuttal.

**4.     Brady *Violations.*** The Government violates due process when it suppresses evidence favorable to the accused. *Brady v. Maryland*, 373 U.S. 83, 87 (1963). The defendant must show: (1) the evidence is favorable; (2) the evidence was suppressed by the prosecution; and (3) prejudice. *Strickler v. Greene*, 527 U.S. 263, 281–82 (1999). We review de novo whether a *Brady* violation has occurred. *United States v. Stinson*, 647 F.3d 1196, 1208 (9th Cir. 2011).

First, Jasso argues that the Government violated its *Brady* obligations by suppressing evidence that, before the grand jury, a cooperator witness falsely implicated Jasso in a removal that he could not have participated in because he was not housed in MCJ at the time. We conclude there was no suppression of this evidence. Well before trial, the Government produced both the relevant grand jury

6

transcripts and the jail records that showed Jasso was not housed in MCJ at the time of the removal. This is the evidence that Jasso needed to identify the false testimony.

Second, Jasso argues that the Government suppressed that it and the witness *knew* about the false grand jury testimony before trial. But even assuming that the Government's or a witness's knowledge of false grand jury testimony is "favorable evidence" within the meaning of *Brady*, Jasso suffered no prejudice. The district court allowed extensive re-examination of the witness on this issue. These circumstances do not establish a reasonable probability that Jasso lacked a fair trial. *See Kyles v. Whitley*, 514 U.S. 419, 434 (1995).

**5.** ***Hearsay/Authentication.*** Defendants challenge the admission of five sets of statements made by gang members discussing events that occurred within MCJ. A statement is not hearsay if it is "offered against an opposing party" and the proponent proves by a preponderance of the evidence that it "was made by the party's coconspirator during and in furtherance of the conspiracy." Fed. R. Evid. 801(d)(2)(E). Where Defendants raised their objection at trial, we review the district court's ruling for abuse of discretion. *Lopez*, 762 F.3d at 859. "An abuse of discretion is an error of law or a determination based on a clearly erroneous finding of fact." *United States v. Manchester Farming P'ship*, 315 F.3d 1176, 1181 (9th Cir. 2003). Otherwise, we review for plain error. *Lopez*, 762 F.3d at 859. Here, we find no error under either standard.

7

a.	The "Champ" Kite. The "Champ" kite, introduced through Israel Cota, describes Victorino "Wolfie" Gonzalez's removal and suggests Jasso was involved. Jasso first argues that the kite was not authenticated. Jasso made this objection at trial, so we review for abuse of discretion. Evidence is authenticated if "sufficient proof has been introduced so that a reasonable juror could find in favor of authenticity." *United States v. Pang*, 362 F.3d 1187, 1193 (9th Cir. 2004) (quoting *United States v. Tank*, 200 F.3d 627, 630 (9th Cir. 2000)); *see also* Fed. R. Evid. 901(a). Cota did not author the kite, had not seen it before, and could not make a handwriting comparison. But he testified that the format and contents of the kite were consistent with NF practices and that he knew "Champ" was an NF member named Alexander Montano. We conclude that the district court did not abuse its discretion in rejecting Jasso's authentication objection.

Next, Jasso argues that the kite was inadmissible hearsay because there was insufficient proof that Montano was involved in a conspiracy with Jasso and that the statement was made in furtherance of such conspiracy. Jasso did not make this objection at trial, so we review for plain error. Cota's testimony was sufficient to establish that Montano was a member of NF, and the contents of the kite itself suggest that Montano was involved in NF, knew the reasons behind Gonzalez's removal, and was involved in that removal. This is sufficient to establish that Montano knew of and participated in a joint venture with Defendants. The kite was

8

also written to alert NF members that Johnny "Soldier Boy" Magdaleno was acting in violation of NF's rules and that he should be removed in accordance with gang protocol. This is sufficiently in furtherance of the conspiracy to warrant admission under the co-conspirator exception to the hearsay rule.

b.    <u>Medina's Statements.</u> Cota relayed in a kite Jose "Pollo" Medina's description of Gonzalez's removal, which implicated Jasso. Jasso made a hearsay objection at trial, so we review for abuse of discretion. The evidence presented established that Medina was an NF member, was familiar with NF's rules regarding removals, and responded to Cota's authority within NF. This evidence is sufficient to show that Medina knew of and participated in the conspiracy with Jasso to ensure NF's rules regarding removals were properly followed in Gonzalez's removal. And both Cota's testimony and the kite itself suggest that Medina knew his statements would be incorporated into the kite and forwarded to other NF members to act on. Thus, this evidence also is sufficient to establish that Medina's statements were in furtherance of the conspiracy. Therefore, the district court did not abuse its discretion.

c.    <u>Magdaleno's Statements.</u> Isidro Zavala and Michael Aguilera testified about Magdaleno's statements regarding Gonzalez's and Ernesto Rodriguez's removals. Defendants argue that Magdaleno's statements were not made in furtherance of the conspiracy. Jasso made hearsay objections to each of

9

these statements, so we review for abuse of discretion.

First, "statements made to keep coconspirators abreast of an ongoing conspiracy's activities satisfy the 'in furtherance of' requirement." *United States v. Tamman*, 782 F.3d 543, 553 (9th Cir. 2015) (quoting *United States v. Williams*, 989 F.2d 1061, 1068 (9th Cir. 1993)). Magdaleno's statements to Zavala and Aguilera kept them abreast of the ongoing conspiracy to conduct removals against gang members who violated NF's rules, including Gonzalez and Rodriguez.

Second, we reverse only if "it is more probable than not" that the error materially affected the verdict. *United States v. Torres*, 794 F.3d 1053, 1063 (9th Cir. 2015) (quoting *United States v. Seschillie*, 310 F.3d 1208, 1214 (9th Cir. 2002)); *see also* Fed. R. Crim. P. 52(a). Even assuming that these statements were not made in furtherance of the conspiracy, their admission was harmless. Magdaleno's statements discuss two of the seven removals. The jury had ample other evidence of both Garcia's and Jasso's participation in the conspiracy and of five other removals. And while Magdaleno implicated Jasso in Gonzalez's removal, Aguilera's testimony suggested that Jasso himself bragged about his role in this event— statements that were admissible under Rule 801(d)(2)(A). Therefore, any error in admitting Magdaleno's statements did not prejudice either Defendant.

d. <u>Aguilera's Kite.</u> The Government introduced a kite from Aguilera to NF leadership describing corrections agents' raid on his pod, and the

10

contraband he lost during the raid. Aguilera testified that he wrote the kite to inform his chain of command that he lost important items, per NF's rules, so that he could be disciplined if needed. Defendants argue that the statements were not in furtherance of the conspiracy. Jasso made a hearsay objection at trial, so we review for abuse of discretion. We conclude that because of Aguilera's stated purpose for sending the kite, it was in furtherance of the conspiracy to keep gang leaders updated on how corrections agents were interfering with the operations of the conspiracy. The statements were not "purely historical" because they were intended to achieve the objectives of the conspiracy. *Cf. United States v. Nazemian*, 948 F.2d 522, 529 (9th Cir. 1991). Accordingly, the district court did not abuse its discretion in admitting this evidence.

e.    Delgado's Kite. The Government introduced a kite from Richard Delgado informing NF leadership why he was pulled out of his pod by correctional officers. Delgado testified that if other NF members had discovered that officers did not pull him aside to go to court—as they announced—he would have been unsafe. Again, Defendants argue that these statements were not in furtherance of the conspiracy. Because neither Defendant made a hearsay objection, we review for plain error. As with Aguilera's kite, Delgado's statements had an intended future effect on conspiracy activities given that they were made to reinforce his participation in the conspiracy. The district court did not err in admitting the kite.

11

**6.** ***Expert Testimony.*** Lay witnesses, unlike expert witnesses, must ground their testimony in personal knowledge, and may offer opinion testimony only when it is "rationally based" on their perception and not on "scientific, technical, or other specialized knowledge." Fed R. Evid. 602, 701. Garcia argues that three cooperator witnesses were improper undesignated experts because they based their testimony in part on education received from NF. We conclude that the district court did not abuse its discretion in admitting this evidence. Each witness's testimony was rationally based on his perception of events within MCJ; the basic education on gang structure and tactics under the circumstances presented here was not "specialized knowledge" within the meaning of Rule 701 but rather was based on the witnesses' personal experiences.

**7.** ***Rule 404(b) Evidence.*** Jasso challenges the Government's evidence about prior events as improper propensity evidence. "Evidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character," but such evidence "may be admissible for another purpose." Fed. R. Evid. 404(b)(1), (2).

    a.    <u>Bank Robberies.</u> In testifying about how Jasso was apprehended, Detective Eden Cerda explained that she had been surveilling Jasso because he was a suspect in a series of bank robberies. After Jasso raised a concern about this testimony outside the presence of the jury, the district court suggested a curative

12

instruction. Five days later, Jasso moved for a mistrial. The district court denied this motion and instructed the jury not to consider *any* of Detective Cerda's testimony, including "testimony regarding investigation of other crimes at the time Mr. Jasso was arrested in Fresno."

The district court acted within its discretion in issuing a curative instruction and striking Cerda's testimony rather than granting Jasso's motion for a mistrial. *See United States v. English*, 92 F.3d 909, 912 (9th Cir. 1996). District courts may grant a mistrial if there is a "manifest necessity" for doing so, *Renico v. Lett*, 559 U.S. 766, 773–74 (2010) (quoting *United States v. Perez*, 22 U.S. (9 Wheat.) 579, 580 (1824)), for example, where an obvious procedural error would result in reversal on appeal, *see Illinois v. Somerville*, 410 U.S. 458, 464 (1973). Here, Jasso was not unfairly prejudiced by Detective Cerda's testimony, especially after it was struck in its entirety. As discussed above, the jury knew Jasso was in jail and there was ample evidence of his participation in the NF conspiracy such that it is extremely unlikely that Detective Cerda's brief testimony affected the jury's deliberations or led the jury to convict Jasso because of their view of his character. While we have suggested that curative instructions must be given soon after evidence was introduced, *see United States v. Kerr*, 981 F.2d 1050, 1054 (9th Cir. 1992), here the delay was caused by Jasso. He did not object to the testimony before the jury nor did he request an immediate curative instruction even after such instruction was suggested by the

13

court. Instead, he waited five days to move for a mistrial. Under these circumstances, the district court did not abuse its discretion in concluding that the curative instruction was sufficient to remedy any Rule 404(b) violation.

        b.    <u>Firearms.</u> Testimony at trial indicated that Jasso was apprehended with a large quantity of firearms with high-capacity magazines. Jasso did not make a Rule 404(b) objection to this testimony, so we review for plain error.[2] Even if this evidence implicates Rule 404(b), it did not prejudice Jasso because there was substantial evidence tying him to the conspiracies. Thus, any error did not "seriously affect[] the fairness, integrity or public reputation of" the trial. *United States v. Johnson*, 979 F.3d 632, 636 (9th Cir. 2020).

        c.    <u>North Kern State Prison Fight.</u> The Government introduced evidence that Jasso was observed by correctional officers at North Kern State Prison attacking another inmate. Because Jasso did not make a Rule 404(b) objection to this testimony, we review for plain error. Contrary to the Government's argument, there was no apparent evidence to indicate that this fight was related to the conspiracies charged in the indictment. However, as above, we conclude that it did not prejudice Jasso or implicate the fairness of the proceedings.

---

[2]Jasso also raises a Rule 403 issue, which he preserved at trial and we review for abuse of discretion. Even assuming error, given the extensive evidence tying Jasso to the conspiracies, we conclude that it is not "more probable than not" that any error materially affected the verdict. *Torres*, 794 F.3d at 1063 (quoting *Seschillie*, 310 F.3d at 1214).

**8.** *Cumulative Error.* When "[t]he collective presence of . . . errors is devastating to one's confidence in the reliability" of a verdict, a new trial is warranted. *Killian v. Poole*, 282 F.3d 1204, 1211 (9th Cir. 2002). "[E]ven if no single error [was] prejudicial, where there are several substantial errors, 'their cumulative effect may nevertheless be so prejudicial as to require reversal.'" *Id.* (quoting *United States v. de Cruz*, 82 F.3d 856, 868 (9th Cir. 1996)). But where "each error is, at best, marginal," their cumulative effect is not so prejudicial that reversal is warranted. *United States v. Karterman*, 60 F.3d 576, 580 (9th Cir. 1995).

We conclude that any errors the district court committed related to the issues raised on appeal were cumulatively harmless because apart from the challenged evidence there was sufficient evidence to sustain Defendants' convictions under 18 U.S.C. §§ 1962(d) and 1959(a).

**AFFIRMED.**