**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Solomon TEKLE, Defendant–Appellant.**

**No. 01–50111.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Jan. 15, 2003.

Filed May 27, 2003.

Gerson Simon, Los Angeles, CA, for the defendant-appellant.

Andrea Russi, Assistant United States Attorney, Los Angeles, CA, argued for plaintiff-appellee. Debra W. Yang, United States Attorney, John S. Gordon and Monica Bachner, Assistant United States Attorneys, Los Angeles, CA, joined her on the brief.

Before FRIEDMAN,* KOZINSKI, and RAWLINSON, Circuit Judges.

FRIEDMAN, Circuit Judge.

The appellant challenges his conviction on narcotics and related offenses on six grounds, including the district court's refusal to suppress evidence, ineffective assistance of counsel and the government's failure to prove an essential element of his money-laundering convictions. We conclude that none of his arguments is persuasive and affirm.

I

A jury in the United States District Court for the Central District of California

* Daniel M. Friedman, Senior United States Circuit Judge for the Federal Circuit, sitting by designation.

convicted the appellant Solomon Tekle on fourteen counts of a fifteen-count indictment for conspiracy to import heroin, in violation of 21 U.S.C. §§ 963, 952; attempt to import heroin, in violation of 21 U.S.C. §§ 963, 952; participating in, and aiding and abetting, the structuring of financial transactions to avoid currency reporting requirements, in violation of 31 U.S.C. § 5324(a)(3) and 18 U.S.C. § 2(a); attempted tax evasion, in violation of 26 U.S.C. § 7201; subscribing to a false tax return, in violation of 26 U.S.C. § 7206(1); and money laundering, in violation of 18 U.S.C. § 1956(a)(1)(B)(i). He was sentenced to 360 months' imprisonment. His wife, the co-defendant Lily Tekle, was convicted of the money-laundering and attempted tax evasion counts.

Tekle filed various post-trial motions, which we discuss in Parts II–IV below. The district court denied all of them.

The record reveals a sophisticated, well-organized and well-operated scheme to import substantial amounts of heroin from Thailand to the United States. Tekle had couriers who carried a locked suitcase from Los Angeles to Bangkok, where they checked in at a pre-arranged hotel and were visited by a man named "Morrison," to whom they turned over the suitcase and who procured for them airline transportation from Bangkok to Europe. Another person then visited the courier and delivered a hard suitcase containing slightly more than four kilograms of heroin concealed in a hidden compartment. The hard suitcase itself was contained in a larger suitcase, both of which the courier received. The courier put his or her clothes into the hard suitcase. The courier flew to Europe, from which he returned to Los Angeles on a different airline and delivered the heroin to Tekle.

Tekle arranged the couriers' trips, obtained airline tickets and made hotel reservations for them, and paid all of their expenses. He paid each courier $5,000 or $10,000 for each trip.

Couriers then transported the heroin from Los Angeles to Chicago, where they delivered it to Tekle's customers. They were paid $500 to $1,500 for the Chicago trips.

Between November 1992 and September 1994, there were seven such importations into the United States and one into Ethiopia. In addition, couriers twice were arrested, once in Bangkok and once in Athens, Greece, on their return to the United States with suitcases containing heroin.

Tekle does not challenge the sufficiency of the evidence to support his narcotics convictions.

## II

A. Acting under arrest and search warrants, the police arrested Tekle at the doorway to his residence and placed him in a police car. The arresting agent showed Tekle the first page of one of the warrants but did not give him a copy of either warrant. The agent testified that he did not give Tekle a copy because it would have been taken from him at the time of booking and Tekle did not request it. Further, it was police policy not to give a copy of the search warrant where the occupant of the place to be searched was to be arrested. The agent left a copy of the search warrant, affidavit and inventory at the Tekle residence.

During the search, the officers seized approximately sixty boxes of materials from Tekle's residence and business. The government introduced a significant amount of the seized material at trial.

The first sentence of FED. R. CRIM. P. 41(d) (amended 2002), as it read at the time of the search, stated:

The officer taking property under the warrant shall give to the person from

whom or from whose premises the property was taken a copy of the warrant and a receipt for the property taken or shall leave the copy and receipt at the place from which the property was taken.

FED. R. CRIM. P. 12 (amended 2002), as it read at the time of trial, provided in pertinent part:

(b) PRETRIAL MOTIONS. Any defense, objection, or request which is capable of determination without the trial of the general issue may be raised before trial by motion. . . . The following must be raised prior to trial:

(3) Motions to suppress evidence; . . .

(f) EFFECT OF FAILURE TO RAISE DEFENSES OR OBJECTIONS. Failure by a party to raise defenses or objections or to make requests which must be made prior to trial, at the time set by the court pursuant to subdivision (c), or prior to any extension thereof made by the court, shall constitute waiver thereof, but the court for cause shown may grant relief from the waiver.

Under these provisions, a motion to suppress must be made before trial, and failure to do so constitutes a waiver of the objection unless, for good cause shown the district court vitiates the waiver.

Tekle did not move before or at trial to suppress the evidence seized from his house, based on the police's failure to give him a copy of the warrant. He first raised the issue in motions for a new trial. The district court rejected the claim. It ruled that although the police had deliberately violated Rule 41(d), Tekle had waived the contention by not raising it before trial and had not shown good cause for relief from the waiver under Rule 12(f).

In his appeal Tekle offers no justification or excuse for his failure to move to suppress the seized evidence before trial, as Rule 12(f) required him to do. Instead, he contends that, at the hearing on his post-trial motion to suppress, the district court considered the merits of his motion and that, "[i]n hearing the motion on its merits, the district court 'implicitly concludes that there is adequate cause to grant relief from waiver of the right to seek suppression.'" He relies on *United States v. Vasquez*, 858 F.2d 1387, 1389 (9th Cir.1988), where we held that "[w]hen a court rules on the merits on an untimely suppression motion, it implicitly concludes that there is adequate cause to grant relief from a waiver of the right to seek suppression." (citation omitted).

The premise of Tekle's contention is incorrect. Contrary to his contention, the district court did not rule on the merits of his suppression motion, i.e., it did not hold that the seized evidence should have been suppressed. Instead, the court held that because Tekle had not shown good cause for relief from his waiver, he was precluded from raising the issue. The court therefore denied his motion to suppress— not on the merits, as he contends, but because he had waived the issue.

To be sure, the district court stated in its post-trial order that "the agent's failure to serve the search warrant on Solomon Tekle was violative of the Fourth Amendment under *McGrew* and, therefore, a fundamental violation of Rule 41(d)." That statement was made, however, in rejecting Tekle's contention before the district court, which he does not repeat here, that "a new trial is warranted because of a change in the law based on the Ninth Circuit's decision in *United States v. Gantt*, 194 F.3d 987 (9th Cir.1999)." The district court held, however, that "*Gantt* did not change the law. In fact, the *Gantt* court acknowledged as much." In light of that ruling, the district court concluded that "no good cause exists for considering the merits of Defendants' motion."

The decision whether to grant an exception to a Rule 12 waiver lies in the discretion of the district court. *See United States v. Gonzales*, 749 F.2d 1329, 1336 (9th Cir.1984); *cf. United States v. Wilson*, 895 F.2d 168, 172–73 (4th Cir.1990) (per curiam). The district court did not abuse its discretion in upholding Tekle's waiver.

B. Tekle contends that his lawyer's failure to move to suppress before trial violated his Sixth Amendment right to effective assistance of counsel. To establish this claim, Tekle must show both that (1) "counsel's representation fell below an objective standard of reasonableness" and that (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 688, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Tekle has made neither showing.

■ The record does not show why counsel failed to move to suppress before trial. It could have reflected counsel's strategies or tactics in conducting the defense. It also could have reflected counsel's assumption that the motion was unlikely to succeed because of the language of Rule 41(d) that the officer seizing property must give the person whose property was seized a copy of the warrant "or shall leave the copy ... at the place from which the property was taken." Since the police officer left a copy of the warrant at the Tekle residence, counsel may have concluded that Rule 41(d) had not been violated.

To be sure, *Gantt* subsequently rejected "the government['s] suggest[ion that] the rule was satisfied because the agents left the complete warrant at the apartment after the conclusion of the search and Gantt's arrest. We reject[ed] the government's reading of Rule 41(d). Absent exigent circumstances, Rule 41(d) requires service of the warrant at the outset of the search on persons present at the search of their premises." 194 F.3d at 1001. Tekle has not shown, however, that in failing to move to suppress before trial, his counsel's performance "fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688, 104 S.Ct. 2052.

■ Nor has Tekle established that if his counsel had moved to suppress, "the result" of his criminal trial "would have been different." *Id.* at 694, 104 S.Ct. 2052. In rejecting Tekle's ineffective assistance of counsel claim, the district court found that most of the seized evidence was "corroborative or cumulative," or had a "minimal substantive impact." Wholly apart from the seized evidence that was introduced at trial, there was abundant proof of Tekle's guilt. Tekle has not shown that if his counsel had moved before trial to suppress the seized evidence, the jury would have reached a different result.

## III

The only counts for which Tekle contends there is insufficient evidence to support a conviction are the money-laundering charges. He argues that the government failed to prove one of the three necessary elements of that offense, which we summarized in *United States v. Marbella*, 73 F.3d 1508, 1514 (9th Cir.1996) (citations omitted), as follows: that the defendant "(3) intended the transaction ... to conceal the nature, source, or ownership of the illegal proceeds."

The government asserted that the funds Tekle used to make payments toward the purchase of a Los Alimos home and a grocery store came from his narcotics trafficking. Tekle contends that the government did not prove that he intended to conceal the illegal nature of those funds because the "transactions in question were

open, notorious, and did not disguise defendant's identity."

■ The necessary concealment, however, is that of the source of the funds, not the identity of the money-launderer. Two other circuits have so recognized. *See, e.g., Hollenback v. United States,* 987 F.2d 1272, 1278–80 (7th Cir.1993); *United States v. Lovett,* 964 F.2d 1029, 1034 (10th Cir.1992). Although we have not decided that question under the money-laundering provision at issue here, we have held under the closely related intent requirement of another money-laundering provision, 18 U.S.C. § 1956(a)(3) that the fact that the defendants did not attempt to disguise their identity did not "negate their intent to conceal." *United States v. Manarite,* 44 F.3d 1407, 1416 (9th Cir.1995). We distinguished *United States v. Sanders,* 928 F.2d 940 (10th Cir.1991), as a case where "the defendant engaged in ordinary commercial transactions with cash that happened to be the proceeds of drug dealing," rather than in transactions that were "engaged in for the *purpose* of concealing assets." *Manarite,* 44 F.3d at 1416 (citation and internal quotation marks omitted).

■ The government submitted extensive evidence that Tekle and his wife concealed the nature and source of the funds derived from the narcotics business. Their actions were those that money-launderers typically take to do so.

Tekle and his wife maintained eight separate bank accounts. They deposited $1.6 million in cash during the two-year period involved in this case. No cash deposit exceeded $10,000. When the proposed deposit exceeded that amount, they made multiple deposits of less than $10,000 on the same day in different banks. Further, as the district court stated, "[i]n addition[ ] to this evidence suggesting concealment or disguise of the source and nature of the funds via a complicated web of interbank transactions, the government presented evidence that on the loan application for their home, Defendants provided false information as to their income and indicated that the funds used to purchase the home were their legitimate savings rather than the proceeds of drug sales."

Viewed in the light most favorable to the government, *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), the evidence fully supports the money-laundering convictions.

## IV

Tekle's remaining contentions need not detain us long.

A.  Tekle contends that, contrary to the requirements of *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), the prosecution failed before trial to disclose to him exculpatory evidence and that he therefore is entitled to a new trial. The alleged exculpatory evidence related to one of Tekle's couriers, Dorton, who was arrested in Thailand for heroin possession and imprisoned there. He subsequently was transferred to the United States to serve his sentence, pursuant to a prisoner-transfer treaty between the United States and Thailand.

Dorton testified for the government at trial and was extensively cross-examined about his confinement and treatment in Thailand. In his trial testimony Dorton stated that conditions in the Thai prison were "livable." In contrast, prior to the trial, while he was temporarily in this country and attempting to be transferred here to serve his sentence, he made statements to a deputy probation officer complaining about and describing bad living conditions in the Thai prison. Tekle contends that the government should have disclosed the latter statement to him, which he could then have used to cross-examine and impeach Dorton.

■ To establish a *Brady* violation, Tekle "must show (1) that the material was exculpatory; (2) that the exculpatory material was not produced when it should have been; and (3) that the failure timely to produce the exculpatory material" "was material." *United States v. Steinberg*, 99 F.3d 1486, 1489–90 (9th Cir.1996) (citation and internal quotation marks omitted). A new trial is warranted "only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Id.* at 1490 (citation and internal quotation marks omitted).

■ Dorton's earlier statement about the deplorable living conditions in the Thai prison was not exculpatory, since it had nothing directly to do with Tekle's guilt or innocence. At most, it could have been used to cross-examine Dorton in the hope of weakening his credibility. Moreover, it related to only a peripheral point in Dorton's direct testimony. There is no reason to believe that, had the jury been aware of this earlier statement, it would have rejected Dorton's testimony. As the district court stated, "Dorton's testimony was corroborated with not one, but two other couriers as well as hotel, airline and telephone records." [Exc 54] It cannot be said that if this statement had been disclosed to Tekle and used to cross-examine Dorton, the jury verdict "would have been different." *Id.*

■ B. Tekle argues that the government denied him due process by constructively amending his indictment with respect to the money-laundering offenses. "An amendment of the indictment occurs when the charging terms of the indictment are altered, either literally or in effect, by the prosecutor or a court after the grand jury has last passed upon them." *United States v. Adamson*, 291 F.3d 606, 614 (9th Cir.2002) (citations and internal quotation marks omitted).

■ Tekle was charged with three money-laundering counts, and also with structuring financial transactions to avoid currency reporting requirements. He contends that by introducing evidence and arguing that Tekle and his wife had violated the anti-currency structuring laws through carefully ensuring that cash bank deposits were below $10,000 and that they had committed tax evasion, the government broadened the scope of the money-laundering charges in the indictment.

The government did not constructively amend the indictment's money-laundering charges. The three money-laundering counts (Counts 5, 7 and 13) each charged that the Tekles "conducted . . . a financial transaction . . . involving the proceeds of the felonious" heroin dealings "knowing that the transaction was designed in whole and in part to conceal and disguise the nature and source of such proceeds"—the three "financial transaction[s]" being payments made toward the purchase of the Los Alimos residence and the retail business. The currency structuring and other offenses to which Tekle refers were the means by which the Tekles carried out the money-laundering and for which they were specifically charged in other counts of the indictment.

Tekle contends that the "holding" in *Stirone v. United States*, 361 U.S. 212, 80 S.Ct. 270, 4 L.Ed.2d 252 (1960), "is applicable to the instant case" and supports his argument that the government here constructively amended the indictment. *Stirone*, however, undermines rather than supports Tekle's position.

In that case Stirone was indicted for violating the Hobbs Act, 18 U.S.C. § 1951 by obstructing interstate commerce in sand through extortion. 361 U.S. at 213, 80 S.Ct. 270. The government introduced evidence of an effect on interstate commerce in both sand and steel. *Id.* at 214,

80 S.Ct. 270. The Supreme Court reversed Stirone's conviction. *Id.* at 219, 80 S.Ct. 270. It noted that although the indictment charged only interference with interstate commerce in sand and not steel, the district court permitted the jury to consider the latter form of commerce. Therefore, "it cannot be said with certainty that with a new basis for conviction added, Stirone was convicted solely on the charge made in the indictment the grand jury returned. Although the trial court did not permit a formal amendment of the indictment, the effect of what it did was the same." *Id.* at 217, 80 S.Ct. 270. The Court held: "[W]hen only one particular kind of commerce is charged to have been burdened a conviction must rest on that charge and not another, even though it be assumed that under an indictment drawn in general terms a conviction might rest upon a showing that commerce of one kind or another had been burdened." *Id.* at 218, 80 S.Ct. 270.

The difference between *Stirone,* and the present case is clear. In *Stirone* the indictment charged only obstructing interstate commerce in sand, but the conviction could have rested on obstructing such commerce in steel. In the present case, however, the additional charges that Tekle asserts constructively amended the money-laundering counts were themselves charged in other counts of the indictment and were integral parts of the money-laundering scheme itself. Tekle's conviction under the money-laundering counts could not have rested upon a crime not charged in the indictment.

C. Finally, Tekle contends that he was denied a fair trial by ethnic references made by a government expert witness.

█ In explaining the pricing of heroin in Chicago, the witness referred to "variables." Asked to explain what that meant, he stated: "One variable is, if the buyer and the seller are both West Africans, then the sale of the heroin is—the sale is—the price paid is much cheaper. If it's a West African individual who may be selling it to an African American individual, the price is quite a bit higher." Since Tekle did not object at trial to the witness's statements, we review them for plain error. *United States v. Cabrera,* 222 F.3d 590, 595 (9th Cir.2000).

Tekle relies on the statement in *Cabrera* that "[a]ppeals to racial, ethnic, or religious prejudice during the course of a trial violate a defendant's Fifth Amendment right to a fair trial." *Id.* at 594. That case involved the testimony of the government's lead witness, Detective Brooks, who had had undercover drug dealings with the two defendants, Cabrera and Mulgado. *Id.* at 591. Brooks testified at length.... Throughout his testimony, Detective Brooks made references to Cabrera and Mulgado's Cuban origin. For example, when asked why he failed to contact Cabrera for three months, Brooks responded:

Well, we were currently doing other investigations. At this time period, *we were working a lot of Cubans in the area.*

*Id.* at 591–92.

The court pointed out that Brooks "initiated all of his improper comments—about 'working Cubans,' the way Cubans package their drugs in wafers, and that resident aliens tend to be flight risks—on direct examination." *Id.* at 597. The court held that "the admission of Detective Brooks's improper references to Cubans was plain error" and required reversal of the convictions. *Id.*

█ The present case is a far cry from *Cabrera.* Here, the witness was not the government's lead witness but an expert on drug pricing. His references to West African drug dealers were not gratuitous but were an explanation of how heroin dealers in Chicago priced the drugs and

how differences in their ethnicity and that of their customers would affect the price. His statements about West Africans were a necessary part of his explanation of drug pricing in Chicago and, unlike Brooks's gratuitous comments about Cubans in *Cabrera*, were not "improper references to [West Africans]." *See id.* at 597. They were not "[a]ppeals to ... ethnic ... prejudice," as in *Cabrera. See id.* at 594.

Finally, unlike *Cabrera*, where the witness's statements about Cubans were made in a case in which the defendants themselves were Cuban, so that the prejudicial impact was serious, here the statements about West Africans did not directly affect Tekle, who was from Ethiopia, which is in East Africa.

AFFIRMED.