**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
        *Plaintiff-Appellee*,

v.

DAVID TAMMAN,
        *Defendant-Appellant*.

No. 13-50463

D.C. No.
2:11-cr-01165-PSG-2

OPINION

Appeal from the United States District Court
for the Central District of California
Philip S. Gutierrez, District Judge, Presiding

Argued and Submitted
November 21, 2014—Pasadena, California

Filed April 3, 2015

Before: William A. Fletcher and Jay S. Bybee, Circuit
Judges, and David Alan Ezra, District Judge.[*]

Opinion by Judge Ezra

---

[*] The Honorable David Alan Ezra, District Judge for the U.S. District
Court for the District of Hawaii, sitting by designation.

## SUMMARY[**]

### Criminal Law

The panel affirmed a conviction and sentence for conspiracy to obstruct justice, accessory after the fact to mail fraud and securities law violations, altering documents to influence a federal investigation, and aiding and abetting false testimony at an SEC deposition.

The panel held that the Sentencing Guidelines commentary prohibiting simultaneous application of the Broker-Dealer enhancement under U.S.S.G. § 2B1.1(b)(18)(A) (2012) (2014 version at U.S.S.G. § 2B1.1(b)(19)(A)) and the Special Skill enhancement under U.S.S.G. § 3B1.3 does not apply when the Broker-Dealer enhancement pertains specifically to a principal's offense and the Special Skill enhancement pertains to a defendant-accessory's offense.

The panel held that in calculating a loss figure greater than $20 million under U.S.S.G. § 2B1.1(b)(1), the district court correctly held that the full measure of the loss inflicted by a co-defendant's crime would have been foreseeable to the defendant despite his status as a mere accessory to that crime. The panel likewise held that in finding that the defendant's crime involved more than 50 victims under U.S.S.G. § 2B1.1(b)(2), the district court did not err by including victims of the co-defendant's crime, where the defendant did

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

not have actual knowledge of those victims but the victims were reasonably foreseeable to him.

The panel held that the district court did not err in finding that the defendant, a practicing attorney and partner at a major law firm, was competent to waive his jury trial and that his waiver was knowing and intelligent.

The panel held that the district court did not plainly err (1) in excluding a non-lawyer's testimony reciting facts and the legal conclusion that the defendant acted in conformity with unidentified SEC rules and regulations and otherwise did not break the law; (2) in determining that the district court was capable of understanding, through a written proffer in a trial brief rather than in live testimony in this bench trial, an expert's opinion regarding the defendant's professional and ethical duties as an attorney; and (3) in admitting coconspirator nonhearsay testimony.

---

## COUNSEL

Alan M. Dershowitz (argued), Cambridge, Massachusetts; David Duncan, Zalkind Duncan & Bernstein LLP, Boston, Massachusetts; William J. Genego, Santa Monica, California, for Defendant-Appellant.

Paul G. Stern (argued) and Elana Shavit Artson, Assistant United States Attorney, Office of the United States Attorney, Los Angeles, California, for Plaintiff-Appellee.

---

## OPINION

EZRA, District Judge:

Appellant David Tamman raises five issues in his appeal from the district court's judgment of conviction and sentence. We begin by addressing an issue of first impression, that is, whether the district court erred at sentencing by applying both the "Broker-Dealer" enhancement under United States Sentencing Guideline Manual (U.S.S.G.) § 2B1.1(b)(18)(A) (2012) (2014 version at U.S.S.G. § 2B1.1(b)(19)(A)) and the "Special Skill" enhancement under U.S.S.G. § 3B1.3. We hold that the Sentencing Guidelines commentary prohibiting simultaneous application of the Broker-Dealer and Special Skill enhancements does not apply when the Broker-Dealer enhancement pertains specifically to a principal's offense and the Special Skill enhancement pertains to a defendant-accessory's offense.

We then address Tamman's additional bases for appeal: his arguments that (1) his waiver of his right to a jury trial was not knowing, voluntary, and intelligent; (2) the district court erred in excluding two proffered experts; (3) the district court erred in admitting the statement of an alleged coconspirator; and (4) the district court erred in calculating loss and victim amounts, as required under the Sentencing Guidelines. We affirm the district court's conviction and sentence.

## I.  Factual and Procedural History

In 2003, Tamman, an attorney licensed in California, began performing work for NewPoint Financial Services, Inc., a company owned by John Farahi. To raise money

through NewPoint, Farahi made private offerings of debentures. NewPoint did not register the debentures with the SEC, and while it took steps to make it appear that it was complying with federal securities law pertaining to unregistered securities—including hiring Tamman to prepare private placement memoranda (PPMs) for the debentures—it in fact regularly failed to disclose material information to investors, in violation of the securities laws.

In 2003, Tamman prepared a PPM that failed to disclose all material risks and facts pertaining to the investment. In 2004, when the National Association of Securities Dealers, now known as the Financial Industry Regulatory Authority (FINRA), began an examination of NewPoint that required disclosure of the 2003 PPM, Tamman made substantial changes to the 2003 PPM and provided the new, backdated version to FINRA without disclosing that any changes had been made.

From 2005 to 2009, Farahi raised over $30 million from investors through debentures. Although he represented to the investors that these debentures were low-risk investments, Farahi used the funds for various undisclosed purposes, including payment of his own personal expenses, principal repayments to previous investors, and higher-risk futures options trading. In 2008, his loss of approximately $26 million from option trading significantly hampered his ability to repay NewPoint investors and creditors. Nevertheless, he continued to assure investors that their funds were safe and began to raise additional money to pay back prior investors, sustain his personal expenses, and engage in options trading.

In 2009, the SEC visited NewPoint's offices while investigating a tip that Farahi was running a Ponzi scheme.

After meeting with Farahi, Tamman created more backdated versions of PPMs with added disclosures. Throughout the SEC investigation, Tamman continued to edit backdated PPMs and promissory notes.

In 2012, Tamman was indicted and charged with one count of conspiracy to obstruct justice, one count of accessory after the fact to mail fraud and securities law violations, five counts of altering documents to influence a federal investigation, and three counts of aiding and abetting Farahi's false testimony at an SEC deposition. On October 5, 2012, Tamman waived his right to a jury trial and opted for a bench trial. During in limine hearings on October 1, 2012, and October 15, 2012, the district court excluded Tamman's experts, Mason Dinehart and Stanley Lamport. The district court offered Tamman the chance to revise Dinehart's report and requested that the substance of Lamport's report be included in a trial brief. His case proceeded to trial on October 31, 2012.

In November 2012, the district court found Tamman guilty, and in September 2013, sentenced him to 84 months of imprisonment, well below the calculated Sentencing Guidelines sentencing range of 151 to 188 months.

## II. Discussion

On appeal, Tamman argues that his conviction was the result of an unconstitutional jury waiver and expert testimony exclusion, as well as inadmissible hearsay. He also argues that three errors at sentencing—simultaneous application of the Broker-Dealer and Special Skill enhancements, and

calculation of loss and number of victims—necessitate remand. We disagree.[1]

## A. Alleged Sentencing Errors

The district court sentenced Tamman as an accessory after the fact to Farahi's crimes of mail fraud and unregulated offer and sale of securities, pursuant to U.S.S.G. § 2X3.1. That Sentencing Guideline provides that the applicable base offense level for a defendant-accessory is the total offense level of the principal's crime, including any applicable special offense characteristics that were known or reasonably should have been known by the defendant-accessory, less six levels. U.S.S.G. § 2X3.1 cmt. n.1. Once the district court determines the base offense level, the district court must also apply any specific offense characteristics applicable to the defendant-accessory's conduct.

In Tamman's case, the base offense level was therefore the total offense level for Farahi's mail fraud and securities crimes, which is prescribed by U.S.S.G. § 2B1.1, less six levels. Farahi's mail fraud and securities crimes included the following special offense characteristics: a 22-level enhancement for loss under § 2B1.1(b)(1)(L); a four-level enhancement under § 2B1.1(b)(2)(B) because the crime involved 50 or more victims; and a four-level enhancement for Farahi's role as an investment adviser during the commission of a securities law violation under § 2B1.1(b)(18)(A). The district court found that the total offense level for Farahi's mail and securities crimes, including applicable special offense characteristics, was 37. Pursuant to U.S.S.G. § 2X3.1(a), the district court reduced the

---

[1] We have jurisdiction pursuant to 28 U.S.C. § 1291.

total offense level by 6 to ascertain Tamman's base offense level for his accessory after the fact crime. However, because § 2X3.1 caps the maximum base offense level at 30, the district court determined that Tamman's base offense level was 30.

Upon calculating the total offense level for Farahi's crime and subtracting the requisite levels, the district court then added special offense characteristics specific to Tamman: a two-level enhancement for Tamman's use of his lawyering skills to commit the crime under § 3B1.3 and a two-level enhancement for Tamman's role in impeding the SEC investigation under § 3C1.1. After applying the Special Skill and Obstruction of Justice enhancements, the district court calculated Tamman's total offense level as 34.

Tamman challenges the dual application of the Broker-Dealer and Special Skill enhancements, as well as the district court's factual findings as to the total loss amount and total number of victims. We review the district court's interpretation of the Sentencing Guidelines de novo and its findings of fact at sentencing for clear error. *United States v. Gadson*, 763 F.3d 1189, 1219 (9th Cir. 2014).

> **1. Application of Broker-Dealer and Special Skills Enhancements**

Tamman contends that the dual application of the Broker-Dealer enhancement and the Special Skills enhancement was improper and barred by the Sentencing Guidelines. In support, Tamman cites the Sentencing Guideline Application Note to § 2B1.1(b)(18)(A), which states, "[i]f subsection (b)(18) applies, do not apply § 3B1.3." U.S.S.G. § 2B1.1 cmt. n.14(C) (2012) (2014 version at cmt. n.15(C)).

As this court has long acknowledged, the Sentencing Guidelines recognize the problems inherent in double counting and, in an effort to avoid increasing a defendant's sentence for a harm that has already been fully taken into account, expressly prohibit the dual application of Sentencing Guidelines that account for the same harm. *United States v. Smith*, 719 F.3d 1120, 1124 (9th Cir. 2013) (citing *United States v. Rosas*, 615 F.3d 1058, 1065 (9th Cir. 2010); *United States v. Holt*, 510 F.3d 1007, 1011 (9th Cir. 2007)). "However, 'when each invocation of the behavior serves a unique purpose under the Guidelines,' we conclude that the Commission 'authorized and intended' the cumulative application of both provisions." *Id.* (quoting *Holt*, 510 F.3d at 1011).

In 2003, the Sentencing Commission amended the Broker-Dealer enhancement to cover registered brokers and dealers, associated persons of a broker or dealer, investment advisers, and associated persons of an investment adviser. U.S.S.G. app. C, vol. II, at 367 (amend. 653) (2014). The rationale accompanying the amendment explains:

> The Commission concluded that a four level enhancement appropriately reflects the culpability of offenders who occupy such positions and who are subject to heightened fiduciary duties imposed by securities law or commodities law similar to duties imposed on officers and directors of publicly traded corporations. Accordingly, the court is not required to determine specifically whether the defendant abused a position of trust in order for the enhancement to apply, and a corresponding application note provides that,

in cases in which the new, four level enhancement applies, the existing two level enhancement for abuse of position of trust at §3B1.3 (Abuse of Position of Trust or Use of Special Skill) shall not apply.

*Id.*

As the Commentary makes clear, the prohibition on the dual application of the Broker-Dealer and Special Skill enhancements reflects the Commission's view that the Broker-Dealer enhancement already accounts for the Broker-Dealer's role and that application of both enhancements would amount to double counting. However, we hold that this rationale does not apply in cases like the one at hand, where the Broker-Dealer enhancement reflects the behavior of the principal and the Special Skill enhancement reflects separate and distinct behavior of the defendant-accessory. In that situation, application of both special offense characteristics is not double counting; it reflects different conduct committed by two different parties. We therefore affirm the district court's application of both enhancements in this case.

## 2. Calculation of Loss Amount

Next, Tamman argues that the district court erred in calculating a loss figure greater than $20 million under U.S.S.G. § 2B1.1(b)(1) because he was only aware of $11 million in loss. According to Tamman, the extent of the loss was not an essential element of Farahi's crime and he therefore cannot be charged with knowledge of that loss amount by his mere status as accessory to that crime.

U.S.S.G. § 2B1.1(b)(1) requires a sentencing court to increase the base offense level in accordance with the amount of actual or intended loss that the crime inflicted. Actual loss includes the amount of pecuniary harm that the "defendant knew or, under the circumstances, reasonably should have known, was a potential result of the offense." U.S.S.G. § 2B1.1 cmt. n.3(A)(I), (iv). Under U.S.S.G. § 2X3.1, the amount of loss is limited to the amount of which the defendant-accessory knew or should have reasonably known. *Id.* § 2X3.1 cmt. n.1.

Although Tamman is correct that the extent of loss was not an essential element of Farahi's crime, the district court did not end its loss examination there. First, the district court examined the PPMs that Tamman backdated. It credited the amounts disclosed therein because Tamman had altered the disclosures so that it would appear that the disclosures originally made to investors matched the current financial situation of NewPoint. Given that the purpose of revising the PPMs was to reflect NewPoint's actual financial condition, the district court did not clearly err by relying on the amounts disclosed in the revised PPMs. Second, the district court properly credited the testimony of Elaheh Amouei, Farahi's bookkeeper, which indicated that Tamman had substantial knowledge of Farahi's activities. Based on this combination of evidence, the district court correctly held that the full measure of Farahi's loss would have been foreseeable to Tamman.

### 3. Calculation of Number of Victims

Finally, Tamman argues that the district court erred in finding that the crime involved more than 50 victims under § 2B1.1(b)(2) because Tamman was only aware of at most 43

investors. According to Tamman, the evidence only demonstrates that he knew of 30 investors from the 2008 offering and 13 investors from previous offerings.

U.S.S.G. § 2B1.1(b)(2) requires the district court to increase the base offense level in accordance with the number of victims that the offense involved. Once again, because of § 2X3.1's knowledge requirement, the court can only count the number of victims about whom the defendant-accessory knew or reasonably should have known. U.S.S.G. § 2X3.1 cmt. n.1.

Although Tamman is correct that the evidence only proves that Tamman had *actual* knowledge of 43 victims, the district court did not err in finding that Tamman could have reasonably foreseen the additional 41 victims of Farahi's crime. The district court considered that Tamman, as an accessory after the fact to Farahi, had knowledge of Farahi's mail fraud and Ponzi scheme. The mere fact that his actual knowledge may have been limited to 43 victims does not preclude a finding that all of the victims were reasonably foreseeable to him. Accordingly, the district court did not clearly err in calculating the number of victims under § 2B1.1(b)(2).

## B. Jury Waiver

Tamman's second claim on appeal is that the district court failed to make an adequate inquiry or provide sufficient information to Tamman to ensure his jury waiver was knowing, voluntary, and intelligent. Tamman contends that, upon learning that Tamman took medications and that Tamman was unsure as to whether he was "under the influence," the district court had the duty to conduct an in-

depth colloquy to assess Tamman's competence. Additionally, Tamman argues that because the district court gave him less time than he originally requested to decide whether to waive a jury, his stress and anxiety may have exacerbated the impact of his conditions and medications. Finally, Tamman argues that the district court failed to sufficiently inform him of the rights he would relinquish pursuant to a jury waiver, as required under *United States v. Cochran*, 770 F.2d 850, 853 (9th Cir. 1985). "We review the adequacy of a jury-trial waiver de novo." *United States v. Shorty*, 741 F.3d 961, 965 (9th Cir. 2013).

## 1. Adequacy of the Inquiry

A criminal defendant may waive his right to trial by jury if there is (1) a written waiver that is knowing and intelligent, (2) governmental consent, and (3) court approval. Fed. R. Crim. P. 23(a); *United States v. Duarte-Higareda*, 113 F.3d 1000, 1002 (9th Cir. 1997). Although written waivers are presumptively knowing and intelligent, a district court must nevertheless conduct an in-depth colloquy if "the defendant's mental or emotional state is a substantial issue." *United States v. Christensen*, 18 F.3d 822, 825 (9th Cir. 1994). In other words, "[t]he suspected presence of mental or emotional instability eliminates any presumption that a written waiver is voluntary, knowing or intelligent." *Id.* at 826.

Here, when Tamman stated that he was unsure whether he was under the influence of his medications, the district court carefully inquired whether those medications affected his understanding of the proceedings and the nature of the right that he was waiving. Tamman responded that they did not. Moreover, Tamman's behavior and responses to questions throughout the proceeding indicated that he was competent to

waive his right to jury trial, and Tamman's attorney represented to the district court that Tamman was competent to make the waiver. Tamman presents no evidence that the expedited time frame for the jury waiver would have had any effect on his competence.

The only evidence upon which the district court could rely were the responses Tamman provided to its questions, his behavior throughout the hearing, and the representations made by his attorney. That evidence indicated that Tamman was competent to waive his jury trial, and this court affirms the district court's finding.

## 2. Sufficiency of the Colloquy

Before a defendant waives his right to a jury, the district court must ensure that he knows what the right guarantees. *Cochran*, 770 F.2d at 853. Accordingly, district courts are strongly encouraged, although not required, to inform defendants that "twelve members of the community compose a jury," that "the defendant may take part in jury selection," that "jury verdicts must be unanimous," and that "the court alone decides guilt or innocence if the defendant waives a jury trial." *Id.* However, the sufficiency of the colloquy is highly dependent on the education and legal sophistication of the defendant, and shorter colloquies can be sufficient to ascertain whether the waiver is knowing and voluntary. *See Shorty*, 741 F.3d at 968 (noting that an abbreviated colloquy might have been sufficient had the defendant been "intellectually sophisticated and highly educated").

Here, as a practicing attorney and partner at a major law firm, Tamman was well aware of the rights that a jury trial would entail. The district court reasonably concluded that

Tamman's competence, background, and experience ensured that he understood the mechanics of a jury trial and the rights he was waiving, even without an in-depth colloquy or a recitation of the four facts mentioned in *Cochran*. Accordingly, this court affirms the district court's finding of knowing and intelligent waiver.

## C.  Evidentiary Errors

Finally, Tamman challenges the district court's exclusion of expert testimony from Mason Dinehart and Stanley Lamport, as well as the admission of a statement from Amouei. Because Tamman did not preserve these evidentiary objections, the court reviews for plain error.[2]

---

[2] When excluding Dinehart's opinions, the district court specifically indicated that it only excluded Dinehart's testimony as written and gave Tamman the opportunity to revise and resubmit the opinions, making it clear that the ruling was provisional. To preserve the error for appeal, Tamman would have needed to make an offer of proof to the district court, outlining the testimony that was excluded. Because Tamman did not do so, he failed to preserve the error on the exclusion of Dinehart's testimony and the court reviews for plain error. *See United States v. Archdale*, 229 F.3d 861, 864 (9th Cir. 2000) ("[The] contention that the mere filing of a motion in limine preserves for appeal the issue of the admissibility of the evidence to which the motion is directed is without merit.").

Similarly, the district court was clear when it excluded Lamport's expert report that Tamman was to revisit the admissibility of Lamport's testimony in both his trial brief and during the course of trial. Because the district court's in limine ruling excluding Lamport was not definitive and because Tamman failed to revisit the issue or present a subsequent offer of proof, the court reviews the district court's decision for plain error. *United States v. Bishop*, 291 F.3d 1100, 1108 (9th Cir. 2002) ("In the absence of an offer of proof . . . reversal will lie only where there is plain error." (internal quotation marks omitted)).

### 1. Expert Opinions

In general, an expert may only testify as to "scientific, technical, or other specialized knowledge [that] will assist the trier of fact to understand the evidence or determine a fact in issue"; an expert cannot testify to a matter of law amounting to a legal conclusion. Fed. R. Evid. 702(a); *Aguilar v. Int'l Longshoremen's Union Local No. 10*, 966 F.2d 443, 447 (9th Cir. 1992).

The district court concluded that Dinehart's opinion provided only a recitation of facts and the legal conclusion that Tamman acted in conformity with unidentified SEC rules and regulations and otherwise did not break the law. This is not a proper expert opinion. Moreover, as the district court noted, Dinehart, who is not a lawyer, does not appear to be qualified to offer the opinions that he presented. Accordingly, the district court did not plainly err in excluding Dinehart's testimony.

The district court excluded Lamport's opinion regarding Tamman's professional and ethical duties as an attorney in

Finally, Tamman did not object to Amouei's payment testimony at the time it was elicited. He argues that his objection to earlier testimony by Amouei, on the grounds that she was not a coconspirator, was sufficient to preserve an objection to her later payment testimony. However, the payment testimony is completely distinct from the earlier testimony, and the district court did not make a blanket ruling that any hearsay statement from Amouei automatically qualified as being in the course of and in furtherance of the conspiracy. Accordingly, Tamman did not preserve the error for appeal, and the court reviews the district court's decision for plain error. *See United States v. Bridgeforth*, 441 F.3d 864, 869 (9th Cir. 2006) (noting that if a party does not "object at trial to the district court's decision to admit a co-conspirator's statements, [the court] review[s] their admission for plain error").

part because the trial had shifted from a jury trial to a bench trial and the district court did not believe live testimony was necessary on the issues presented in Lamport's report. Instead, the district court concluded that the applicable ethical standards could be presented in a trial brief. Because a district judge has the discretion as to the necessity of expert testimony, the district judge's determination that he was capable of understanding Lamport's testimony through a written proffer in a trial brief was not plain error. *See Hooper v. Lockheed Martin Corp.*, 688 F.3d 1037, 1053 (9th Cir. 2012) ("[E]ven if expert testimony may assist the trier of fact, the trial court has broad discretion to admit or exclude it." (alteration and internal quotation marks omitted) (quoting *Beech Aircraft Corp. v. United States*, 51 F.3d 834, 842 (9th Cir. 1995) (per curiam)).

## 2. Amouei's Statement

Under Federal Rule of Evidence 801(d)(2)(E), a statement of one coconspirator is admissible nonhearsay against other coconspirators as an admission of a party-opponent, if the statement was made during the course of and in furtherance of the common objectives of the conspiracy. "Although mere conversations or narrative declarations between coconspirators are not in themselves sufficient to invoke the exception to the hearsay rule, statements made to keep coconspirators abreast of an ongoing conspiracy's activities satisfy the 'in furtherance of' requirement." *United States v. Williams*, 989 F.2d 1061, 1068 (9th Cir. 1993).

In the statement at issue, Amouei testified that Farahi told her that he had previously settled one of Tamman's legal bills by paying Tamman in cash. Farahi's statement informed Amouei of the state of the conspiracy and the bookkeeping

necessarily associated with the conspiracy, and it took place while the conspiracy was ongoing. Moreover, the statement helped further the conspiracy by informing Amouei about the transfer of money within the conspiracy, which ensured that the bookkeeping of the conspiracy was accurate. The testimony is therefore coconspirator nonhearsay and the district court did not plainly err in admitting the statement.

## III.    Conclusion

In conclusion, we affirm the district court's dual application of the Broker-Dealer and Special Skill enhancements under the facts of this case, since the former reflected the principal's conduct and the latter reflected the defendant-accessory's conduct. Additionally, we hold that the district court did not err in calculating the loss or victim figures at sentencing. Finally, we affirm the district court's finding of jury waiver and its evidentiary rulings.

**AFFIRMED.**