**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | No.    11-10632 |
| Plaintiff-Appellee, | D.C. No. 3:08-cr-00730-WHA-6 |
| v. | |
| JONATHAN CRUZ-RAMIREZ, AKA Soldado, | MEMORANDUM[*] |
| Defendant-Appellant. | |

| | |
|---|---|
| UNITED STATES OF AMERICA, | No.    11-10635 |
| Plaintiff-Appellee, | D.C. No. 3:08-cr-00730-WHA-4 |
| v. | |
| MORIS FLORES, AKA Slow, AKA Slow Pain, | |
| Defendant-Appellant. | |

| | |
|---|---|
| UNITED STATES OF AMERICA, | No.    11-10638 |
| Plaintiff-Appellee, | D.C. No. |

---

[*]    This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

v.

ERICK DAVID LOPEZ, AKA Spooky,

    Defendant-Appellant.

3:08-cr-00730-WHA-10

---

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

ANGEL NOEL GUEVARA, AKA
Peloncito,

    Defendant-Appellant.

No.    11-10644

D.C. No.
3:08-cr-00730-WHA-3

---

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

MARVIN CARCAMO, AKA Cyco, AKA
Psycho, AKA Syco,

    Defendant-Appellant.

No.    11-10645

D.C. No.
3:08-cr-00730-WHA-2

---

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

No.    12-10051

D.C. No.
3:08-cr-00730-WHA-5

2

v.

GUILLERMO HERRERA, AKA Shorty,
AKA Sparky,

Defendant-Appellant.

Appeal from the United States District Court
for the Northern District of California
William Alsup, District Judge, Presiding

Argued December 4, 2018
Submission Vacated January 11, 2019
Resubmitted July 17, 2019
Seattle, Washington

Before: GRABER, McKEOWN, and CHRISTEN, Circuit Judges.

Defendants Jonathan Cruz-Ramirez, Moris Flores, Erick Lopez, Angel Guevara, Marvin Carcamo, and Guillermo Herrera appeal their judgments of convictions for their participation in RICO and VICAR conspiracies and associated crimes in furtherance of the criminal street gang La Mara Salvatrucha ("MS-13").[1] We vacate Lopez's conviction on Count 8 and Cruz-Ramirez's and Herrera's convictions on Count 15 and remand for resentencing because these convictions are lesser-included offenses of Counts 7 and 14, respectively. We vacate Cruz-Ramirez's conviction on Count 16, Lopez's conviction on Count 9, and Carcamo's,

[1] The parties are familiar with the facts, so we need not repeat them here.

3

Guevara's, and Flores' convictions on Count 4 and remand for resentencing in light of *United States v. Davis*, 139 S. Ct. 2319, 2336 (2019), which held that 18 U.S.C. § 924(c)(3)(B) is unconstitutionally vague. We affirm all other convictions.

1.    The government concedes that the district court erred by sentencing Lopez, Cruz-Ramirez, and Herrera to concurrent terms of life imprisonment for their convictions under 18 U.S.C. § 924(c) and 18 U.S.C. § 924(j)—premised on the same murders—because their convictions under § 924(c) were lesser-included offenses of their convictions under § 924(j). Accordingly, we vacate Lopez's § 924(c) conviction on Count 8 and Cruz-Ramirez's and Herrera's § 924(c) convictions on Count 15 and remand for resentencing.

2.    Defendants' challenge to the constitutionality of 18 U.S.C. § 924(c)(3)(B) was resolved by *Davis*, 139 S. Ct. at 2336. Accordingly, we vacate Cruz-Ramirez's conviction on Count 16, Lopez's conviction on Count 9, and Carcamo's, Guevara's, and Flores' convictions on Count 4, and remand for resentencing.

3.    The district court did not abuse its discretion by allowing the government to introduce expert testimony on rebuttal regarding Lopez's and Herrera's cell-site location information. *See United States v. Koon*, 34 F.3d 1416, 1429 (9th Cir. 1994) (noting the wide discretion of district courts to permit the

government to introduce in its rebuttal case evidence that might have been presented in the case-in-chief), *rev'd in part on other grounds*, 518 U.S. 81 (1996). This expert testimony did not prejudice the remaining defendants because the government appropriately argued inferences in closing argument that were premised solely on cell-site location records and testimony admitted during the government's case-in-chief.

4. Under the particular facts of this case, the district court permissibly excluded Dr. Davis' expert testimony. Pursuant to Federal Rule of Evidence 403, the court acted within its discretion in balancing the probative value of the proffered testimony against the risk of wasted time and juror confusion. *See United States v. Rincon*, 28 F.3d 921, 925–26, 925 n.6 (9th Cir. 1994). Assuming Herrera and Guevara preserved their Sixth Amendment objection, excluding Dr. Davis did not infringe their Sixth Amendment right to present a defense. Several problems with eyewitness testimony were evident from the record, which permitted Guevara and Herrera to "present the substance of" their misidentification defense through cross-examination and logical inferences. *United States v. Waters*, 627 F.3d 345, 354 (9th Cir. 2010).

5. The district court did not abuse its discretion by admitting the Hernandez poem. The court permissibly determined the poem was not hearsay

5

because it was not offered to prove the truth of the matter asserted, and the court appropriately exercised its discretion pursuant to Rule 403. *See United States v. Hinkson*, 585 F.3d 1247, 1267 (9th Cir. 2009) (en banc) (noting that a court's Rule 403 ruling is entitled to great deference). The poem was minimally probative because it made it somewhat more likely that Guevara was present when a crime was committed by MS-13, or that the poem described crimes committed by MS-13. The poem was not specifically connected to any charged crime, but other evidence established that 20th Street clique members were violent against their rivals, that Hernandez was a member of an affiliated gang, that she was Guevara's girlfriend, and that she was near him on the night of December 26, 2007. The poem only posed a slight risk of unfair prejudice to Guevara and no risk of unfair prejudice to other defendants. Even assuming that the poem was improperly admitted as to Guevara, its admission was harmless because, as noted, the eyewitness identifications of Hernandez were strong and evidence from the cell-site location records connected both Guevara and Hernandez to the December 26, 2007 stabbings.

6.     Herrera challenges four evidentiary rulings. First, we agree that the court erred when it allowed an agent to testify about Roberto Acosta's description of a telephone call he received from Herrera immediately after the Estrada

shooting.  *See United States v. Fryberg*, 854 F.3d 1126, 1130 (9th Cir. 2017) (reviewing de novo alleged violations of the Confrontation Clause).  This call was testimonial because Acosta was an informant who was routinely reporting information to law enforcement, and the circumstances objectively demonstrate that Acosta did not make his statements to the agent during an ongoing emergency.  *See United States v. Brooks*, 772 F.3d 1161, 1168 (9th Cir. 2014) (citation omitted).  Nor was Acosta's call an excited utterance.  *See Bemis v. Edwards*, 45 F.3d 1369, 1373 (9th Cir. 1995) ("[T]he excited utterance exception is only available if the declarant has firsthand knowledge of the subject matter of [his] statement.").  Nonetheless, the district court's error was "harmless beyond a reasonable doubt," *United States v. Bustamante*, 687 F.3d 1190, 1195 (9th Cir. 2012), because Acosta's testimony described cryptic, equivocal statements from Herrera that did not directly implicate him in criminal activity, and cell-site location evidence and other co-conspirator testimony implicated Herrera in the Estrada shooting.

The district court did not abuse its discretion by excluding Cruz-Ramirez's recorded statement in which he arguably described shooting a gun that later jammed.  *See United States v. Estrada-Eliverio*, 583 F.3d 669, 672 (9th Cir. 2009) (reviewing a ruling concerning the authentication of evidence for abuse of

discretion). Acosta allegedly recorded Cruz-Ramirez's statement on a wire that he wore, but no witness was called to authenticate this recording. Acosta was uniquely untrustworthy in light of his perjury charges, and there was at least one incident in these proceedings in which a recorded statement was erroneously identified. The court also observed that questions remained about how Acosta's recordings were created. Therefore, the court did not abuse its discretion by concluding that the portion of the recording Herrera sought to introduce lacked a proper foundation. *See United States v. Gadson*, 763 F.3d 1189, 1203 (9th Cir. 2014) ("[T]he party offering the evidence must make a prima facie showing of authenticity so that a reasonable juror could find in favor of authenticity or identification." (internal quotation marks omitted)).

Next, assuming Herrera timely objected, the court did not abuse its discretion by admitting cooperator Jose Alvarado's testimony describing Cruz-Ramirez's accounts of his participation in the Estrada shooting. The court properly admitted this testimony under Federal Rule of Evidence 801(d)(2)(E) because Cruz-Ramirez's jailhouse statements furthered the conspiracy insofar as they apprised Alvarado of the gang's ongoing conflicts with the Nieros and of Cruz-Ramirez's "work" on behalf of the conspiracy. *United States v. Moran*, 493 F.3d 1002, 1010 (9th Cir. 2007) (per curiam) ("When offered against a party, a

8

statement by a coconspirator of a party during the course and in furtherance of the conspiracy is not barred by the hearsay rule." (internal quotation marks omitted)); *see United States v. Tamman*, 782 F.3d 543, 553 (9th Cir. 2015) ("[S]tatements made to keep coconspirators abreast of an ongoing conspiracy's activities satisfy the 'in furtherance of' requirement." (internal quotation marks omitted)).

The court did not abuse its discretion by admitting informant Walter Palma's testimony that he did not believe Cruz-Ramirez when Cruz-Ramirez claimed responsibility for the Estrada shooting. *See United States v. Mendoza-Paz*, 286 F.3d 1104, 1113 (9th Cir. 2002) (reviewing admission of lay opinion testimony for abuse of discretion). Palma testified only as to his own belief in response to Cruz-Ramirez's statement, and did not testify about whether Cruz-Ramirez was generally credible. Finally, any error was harmless; the jury heard testimony that Cruz-Ramirez claimed he was the shooter in the Estrada murder, but also heard testimony that Cruz-Ramirez claimed he drove the van.

7.      The district court did not err when it declined to dismiss Juror 57. Juror 57 unequivocally reassured the court that he would follow instructions and be fair. Because Juror 57 gave repeated assurances and the court was able to observe his demeanor and assess his credibility, we are not firmly convinced that the court's factual findings regarding Juror 57's truthfulness and impartiality were

9

wrong.[2] *United States v. Olsen*, 704 F.3d 1172, 1190 (9th Cir. 2013). Defendants

therefore fail to demonstrate actual bias. *See id.* at 1189. Next, because the district

court plausibly found that Juror 57 did not conceal information during voir dire,

and its finding was not clearly erroneous, defendants fail to demonstrate

*McDonough* bias. *See Fields v. Brown*, 503 F.3d 755, 767 (9th Cir. 2007) (en

banc). Last, Juror 57's past experiences being "checked" by gang members fail to

demonstrate the extreme circumstances necessary to find implied bias. *See United*

*States v. Kechedzian*, 902 F.3d 1023, 1028 (9th Cir. 2018).

8.      The district court did not abuse its discretion by conducting a joint

trial, nor plainly err by providing hundreds of limiting instructions. *See United*

*States v. Barragan*, 871 F.3d 689, 701–02 (9th Cir. 2017) (reviewing decision to

conduct a joint trial for abuse of discretion), *cert. denied*, 138 S. Ct. 1565, *and cert.*

*denied*, 138 S. Ct. 1572 (2018). Joint trials are "particularly appropriate where the

co-defendants are charged with conspiracy," and here, the jury acquitted one

defendant entirely and partially acquitted Cruz-Ramirez, "demonstrating its ability

to compartmentalize" and give each defendant individual consideration. *Id.* at 702.

---

[2]      Nor did the court abuse its discretion by investigating Juror 57 over several hearings and concluding that Juror 57 responded truthfully to questions asked during voir dire. We cannot say that this investigation extended "beyond permissible limits of inquiry." *See United States v. Simtob*, 485 F.3d 1058, 1064–65 (9th Cir. 2007).

The limiting instructions were given to "reduce or eliminate any possibility of prejudice arising from a joint trial," *United States v. Fernandez*, 388 F.3d 1199, 1243 (9th Cir. 2004), and the predicate crimes underlying the RICO and VICAR counts were "well within the ability of the ordinary juror to understand." *See id.* at 1244. Accordingly, the joint trial was not "manifestly prejudicial" and was not an abuse of discretion. *Id.* at 1241.

9.      The government did not violate its obligations under *Brady v. Maryland*, 373 U.S. 83 (1963). To prevail on a *Brady* claim, a "defendant must show: (1) the evidence was exculpatory or impeaching; (2) it should have been, but was not produced; and (3) the suppressed evidence was material to his guilt or punishment." *United States v. Houston*, 648 F.3d 806, 813 (9th Cir. 2011) (internal quotation marks omitted). Evidence that Sergeant Molina thought Walter Palma was involved in the Marquez murder and that Sergeant Molina connected the Marquez detective with an Assistant United States Attorney for further investigation was discussed in open court during trial. Even if this evidence had been suppressed, it had minimal impeachment value given that Palma testified that he committed multiple violent crimes, including attempted murder, and because the evidence concerning Sergeant Molina shows that he encouraged—rather than stifled—further investigation of Palma's involvement in the Marquez murder.

11

Likewise, the government did not violate its *Brady* obligations by failing to disclose material witness warrants issued for the three eyewitnesses to the December 26 stabbings. The record is clear that these witnesses were afraid to testify against MS-13 and that they testified only on threat of arrest or actual arrest. The resulting warrants do not constitute exculpatory information, and there is no reasonable probability that the result of the trial would have been different had Guevara questioned these witnesses about their fear of testifying.

10. The district court did not abuse its discretion when it declined to consider Flores' untimely motion to suppress records containing his cell-site location information. *See United States v. Tekle*, 329 F.3d 1108, 1113 (9th Cir. 2003) ("The decision whether to grant an exception to a Rule 12 waiver lies in the discretion of the district court."). The deadline for filing suppression motions was July 27, 2010. The court granted in part Flores' July 27 motion and suppressed "cell phone records predating May 1, 2008." The government moved for clarification on the grounds that "cell phone records" could include cell-site location information, and the court clarified that "cell phone records" only referred to "text messages and other materials containing *content* of the communications." Flores did not seek additional clarification or reconsideration of the order, and the court's denial of Flores' subsequent and untimely motions to suppress during trial

was not an abuse of discretion.

11. The district court did not err when it permitted the late disclosure of Jaime Martinez's testimony detailing Flores' alleged admissions to uncharged acts in response to Flores' asserted entrapment defense. *See United States v. Loftis*, 843 F.3d 1173, 1176 n.1 (9th Cir. 2016) (reviewing admission of "other crimes" evidence for abuse of discretion and reviewing de novo whether evidence constitutes other crimes evidence). Furthermore, Flores was not harmed by the late disclosure because the court postponed his cross-examination of Martinez so that Flores could conduct additional investigation, and Flores does not demonstrate prejudice resulting from his alleged inability to investigate the late-disclosed acts.

12. The district court did not err by admitting evidence of Flores' alleged juvenile conduct. *See United States v. Camez*, 839 F.3d 871, 877 (9th Cir. 2016) (concluding defendant's conviction "must stand" where the district court instructed the jury that it could convict defendant "only if it found that [d]efendant continued his participation [in the criminal enterprise] after turning 18"). The district court's jury instruction here was just as restrictive as the one given in *Camez*, permitting conviction on conspiracy charges only if Flores continued in the conspiracy after he turned 18 and *only* if the government proved "all elements of the crime as of or after the defendant's 18th birthday."

13

13.     The district court did not circumvent Federal Rule of Evidence 404(b) and did not abuse its discretion by admitting evidence of Flores' uncharged acts. *See United States v. Rizk*, 660 F.3d 1125, 1131–32 (9th Cir. 2011) (reviewing a decision to admit evidence for abuse of discretion).  Evidence of Flores' uncharged acts was evidence "directly related to, or inextricably intertwined with, the crime charged in the indictment," and was therefore not subject to Rule 404(b)'s notice requirement. *Id.* at 1131 (internal quotation marks omitted).  The court was not required to strike testimony about Flores' uncharged juvenile acts even after it declined to give an entrapment instruction, because this testimony was admissible as "proof on the full scope of the conspiracy." *Id.*

14.     The district court did not abuse its discretion by declining to instruct the jury on entrapment. *See United States v. Spentz*, 653 F.3d 815, 818 (9th Cir. 2011) (reviewing for abuse of discretion the denial of an entrapment instruction due to insufficient evidence).  Flores was the *leader* of the 20th Street clique by 2008, and given the dearth of evidence concerning his lack of predisposition, Flores fails to point to even slight evidence satisfying the elements of an entrapment defense.

15.     The district court did not abuse its discretion by denying as untimely Flores' motion to sever his trial and group him for trial with Manuel Franco.

14

Motions filed after the deadline set pursuant to Federal Rule of Criminal Procedure 12(b)(3) are untimely. Fed. R. Crim. P. 12(c)(3). In his only timely motion to sever, Flores requested severance from "all other defendants" and said nothing about his desire to be grouped with Franco. The court properly declined to consider Flores' subsequent and untimely motion to be tried with Franco. *See Tekle*, 329 F.3d at 1113.

16. The district court did not err by limiting Flores' cross-examination of witness Ana Ramos. *See United States v. Larson*, 495 F.3d 1094, 1102 (9th Cir. 2007) (en banc). The probative value of Ramos' alleged affair with Flores was minimal and substantially outweighed by the threat of a mini-trial on the issue. The jury had sufficient information to assess the credibility of Ramos and informant Jaime Martinez, particularly because Martinez admitted that he told Ramos to lie to federal agents by saying that she was being stalked.

17. The district court did not abuse its discretion by denying Lopez's motion for a mistrial. *See United States v. Banks*, 514 F.3d 959, 973 (9th Cir. 2008) (reviewing a denial of a motion for a mistrial for abuse of discretion). Assuming a *Massiah* violation occurred, cooperator Oliver Marota's testimony was "harmless beyond a reasonable doubt," *see Chapman v. California*, 386 U.S. 18, 24 (1967), because three additional witnesses offered the same substantive testimony

15

that Lopez stated he was arrested in possession of a gun linked to two murders. One witness in particular testified that Lopez admitted he was responsible for the killings—testimony far more damaging than anything Marota said.

18. Lopez argues that federal agents searched his cellular telephone in violation of the Fourth Amendment because the applicable state search warrant did not authorize federal law enforcement officers to execute the search. However, "[a]n otherwise properly issued search warrant is not rendered void for Fourth Amendment purposes merely because it was executed by law enforcement officers who lacked warrant-executing authority under state law." *United States v. Artis*, 919 F.3d 1123, 1130 (9th Cir. 2019). Thus, the district court did not err by admitting photographs taken from federal agents' search of Lopez's cellular telephone. Even assuming the warrant was not "otherwise properly issued," any error in admitting the photographs was harmless beyond a reasonable doubt. The only evidence from Lopez's telephone admitted at trial was twelve photographs showing Lopez and other individuals making gang symbols, and tattoos and writings featuring characters such as "MS" and "13." To the extent the photos showed Lopez's involvement in MS-13, they were cumulative of other witnesses' testimony.

19. Carcamo argues that his first counsel was ineffective. This argument

is premature and insufficiently supported by the present record. It may be addressed in a petition filed pursuant to 28 U.S.C. § 2255. *See United States v. McGowan*, 668 F.3d 601, 605 (9th Cir. 2012) ("Challenge [of ineffective assistance of counsel] by way of a habeas proceeding is preferable because it permits the defendant to develop a record as to what counsel did, why it was done, and what, if any, prejudice resulted." (internal quotation marks omitted)).

20. The district court did not abuse its discretion when it denied Carcamo's request to continue trial or for severance. *See United States v. Turner*, 897 F.3d 1084, 1101 (9th Cir. 2018) (reviewing the denial of a motion for a continuance for abuse of discretion), *cert. denied*, 139 S. Ct. 1234 (2019). The court offered a reasoned explanation that after several continuances, another continuance threatened witnesses' memory loss and exacerbated the ongoing danger to witnesses. The court permitted defendants to apply for additional resources if necessary to analyze newly-produced discovery, and to seek continuances to prepare for cross-examination during trial. Accordingly, the court's denial was neither "unreasoning" nor arbitrary. *See id.* at 1102.

21. Besides the two errors for which we vacate defendants' convictions (sentencing based on lesser-included offenses and the unconstitutionality of 18 U.S.C. § 924(c)(3)(B)), any errors committed by the district court were marginal,

17

and they do not cumulatively warrant a new trial.  *See United States v. de Cruz*, 82

F.3d 856, 868 (9th Cir. 1996) (discussing cumulative error).

**VACATED AND REMANDED IN PART, AFFIRMED IN PART.**